1837.

SCHERMERHORN
v.
THE MAYOR &c.
OF NEW-YORK.

SCHERMERHORN and others v. THE MAYOR, ALDERMEN AND COMMONALTY of the city of New-York.

The corporation of New-York had a grant by charter of ground and soil under water which included a slip or dock, with a right to fill up and build upon it. They did fill it up and assessed adjoining owners for benefit; and then commenced the erection of a market-house on the site. *Held*, that the corporation had not, from these acts, made the space a public street; and they had still a right to prescribe the uses to which it should be applied. An injunction, therefore, to restrain the erection of the market-house, obtained by adjoining owners, was dissolved.

*It would seem*, that if the corporation were to recognize and regulate the space as and for a public street, they would be bound thereafter to let it remain so.

THE complainants were owners of lots with store houses thereon fronting on Old Slip in the city of New-York. This slip was filled up and the space which had been occupied by it became as part of the street. The corporation of the city of New-York were about to erect a market-house on the site.

The whole space between the buildings which fronted on either side of the slip, including the slip itself and streets on each side, was one hundred and twenty-six feet; of which the filling up embraced ninety-two feet; the proposed market-house was to take up thirty feet—so that a street was still to be left on each side of the intended market of forty-eight feet in width.

The space which had been used and occupied as the slip was a part of the strip of land under water of 400 feet in width, extending from Corlear's Hook to Whitehall, which had been granted to the corporation by Montgomerie's charter of the 15th January, 1730. After the granting clause, describing the premises by metes and bounds, the charter contains these broad and general words : " Together with all and singular the benefits, liberties, privileges, ways, water-courses, easements, wharfs, keys, profits, hereditaments and appurtenances to the same or any part thereof belonging or appertain-

*May* 30, 1837.

*Corporation.*
*Public Street.*
*Dock or Slip.*
*Injunction.*

ing, or to belong or appertain, or that can in anywise be had, made, used or enjoyed thereon or therewith used ; with full power and authority at any time or times hereafter to fill, make up, wharf and lay out all and every part thereof ; and the same to build upon and make use of in such manner as they, the said mayor, aldermen and commonalty and their successors shall think fit."

The bill in this suit was filed to restrain the corporation from erecting the proposed market-house ; and an injunction had been granted.

A motion was now made to dissolve it, the defendants moving on the bill alone.

Mr. *Storrs* for the defendants.

Mr. *D. Lord, Jr.*, for the complainants, made the following points :

I. The street on each side of old slip fronting the lots of the complainants was a public street by the grants and contract under which the parties hold.

II. The slip or water in the middle, upon which the street in front of the complainants' lots was bounded, was for public use and was a great private advantage to the complainants' lots.

III. The statute authorizing the filling up of slips without compensation to the owners of lots fronting thereto, was founded on the idea of a mere change in the mode of public use as a way, not injurious for that reason : (namely, a use by vessels, to a use by carts, &c.,) and the payment of the expense of such filling up by an assessment upon the same persons and principles as in case of paving streets shows that the new made land was a street for public passage as other streets.

IV. The corporation of New-York hold the streets for the purposes of public passage only, and not for public erections, which erections, both as to their sites and construction, are to be bought and paid for out of the general public funds and not by local encroachments on streets to the injury of individuals owning the adjacent property.

V. The open space of the present old slip, so far as sought to be protected by injunction, is so dedicated as an open space that the owners of the lots fronting on it are entitled to the pro-

tection of an injunction whatever be the title of the defendants to such space: *Trustees of Watertown* v. *Cowen*, 4 Paige, 510.

VI. The remedy at law is imperfect; the immediate injury of proceeding with the erections would be irremediable; and the plaintiffs are entitled to the specific relief they seek and to an intermediate injunction: 2 Story's Equity, 201 to 207; *Corning* v. *Lowerry*, 6 Johns. Ch. C., 439.

THE VICE-CHANCELLOR:—It may be assumed, that the defendants were owners in fee of the soil under water, which was formerly old slip. It appears to be parcel of the one hundred and twenty-seven acres granted by the thirty-eighth section of the charter of 15th January, 1730, comprising a strip of land reaching from Corlear's Hook to Whitehall, and extending from low water mark four hundred feet into the East river: (City Charter with Kent's Notes, p. 87.) This land under water was granted in the amplest manner, " with full power and authority, at any time or times hereafter, to fill, make up, wharf, and lay out all and every part thereof, and the same to build upon and make use of in such manner as they the said mayor and aldermen and commonalty and their successors shall think fit."

By previous grants, the corporation had title to all the land between high and low water mark; and by the ancient maps of the city, it will be seen, that the line of low water mark on the East river was not farther south than where Water street now is. Old slip, therefore, as it lately existed, coming up only to Front street and the water lots granted by the corporation to the individuals, under and from whom the complainants derive title as alleged in their bill, are parcels of the same grant of four hundred feet int ɔ the East river. In the deeds or conveyances of those lots on each side of old slip, the corporation did not stipulate to keep the intermediate space for ever open as a public slip. It is not pretended they were bound to do so; for, although the grantees were required to construct a wharf and street on the side of their respective lots, so as to form a slip, the corporation retained the ownership and use of the slip and of the soil under water within the slip; and this intermediate space they were at liberty to fill up with earth at any time. Such is the express authority of the grant to them;

1837.

SCHERMERHORN
*v.*
THE MAYOR &c.
OF NEW-YORK.

*June* 13.

and without such authority, it would seem to follow as a mat-ter of right incidental to their ownership. That part of sec. 267 of the act of the legislature, (2 Ls. N. Y. of 1813, page 445,) having a bearing on this point, is only declaratory of the right which the corporation already possessed. Section 269 of the same act, authorizing the corporation to assess two-thirds of the estimated expense of filling up the slip on the owners of property in the vicinity who may be benefited thereby, could not have been intended to confer upon such individual owners any interest in the land or restrict the use which the corporation might think proper to make of it after the filling up. The requisition upon them to contribute to the expense must have proceeded upon the notion of a benefit to private property in the general improvement of the neighborhood by filling up and discontinuing a public slip. The manner of making the assessment, as if it were for paving and regulating the streets of the city, cannot have the effect of making the place a public street. It is not declared in the statute that it shall become a street; and the proceeding on the part of the corporation cannot, I think, be construed into a dedication to that particular purpose. The corporation, as already shown from the language of their charter, have a right to build upon and make such use of the land, when filled up, as they shall think fit. To take away or to restrict this right, requires something more than the reclaiming of the ground from the water and assessing a portion of the expense upon the citizens. The corporation are still to exercise their corporate and legislative powers and to prescribe the use to which the property shall be applied. If they should determine to regulate and use it as a public street, I will not say that they may not be bound to continue it as a street; but if they resolve to erect a market house or any other buildings upon the site of the slip, when filled up, or to appropriate the ground to any other use which an owner of private property might lawfully do, I can perceive no good reason why they may not do so.

It is true the bill speaks of it as a public street; and whatever is alleged, as matter of fact, must, upon the present motion, founded on the bill alone, uncontradicted, be taken as true. But these allegations of the bill I consider to be rather the statement of inferences or conclusions of law than of fact,

and, if found not warranted by the premises, may be disregarded.

The bill, moreover, claims that there has been a dedication to the public use as an open space, at least, if not as a public street, and the complainants insist on being protected in the enjoyment of it as such open space, whatever may be the title of the corporation to the land; and the cases of the *Trustees of Watertown* v. *Cowen,* 4 Paige, 510, of the *City of Cincinnati* v. *White,* 6 Peters, 431, and of others of that class are relied on for the principle to support this position. But there are not facts enough in the present case to warrant the application of the principle in those cases. The corporation of the city have done no act by which this piece of land has been appropriated and laid out, as a public square or common and dedicated to the public use as such. They, as owners, have not laid out and sold lots with reference to it as a public square or space to be left open and unoccupied with buildings. While it remained a slip and was used by vessels coming to and lying in its waters, it could not be deemed a public square or mall; and diverting it from the former use does not necessarily give to it the latter character. If the owners of adjacent property had a right to have it remain a public slip for ever, they should have objected in due season to the filling up; but, not having done so, they must be considered as having acquiesced in that measure and are bound to submit to the legislative wisdom of the common council as respects any further use to be made of the land for public purposes. According to the views which I now entertain of this case, the injunction restraining the corporation from erecting a market-house must be dissolved.