## THE PRESIDENT, RECORDER AND TRUSTEES OF THE CITY OF CINCINNATI, PLAINTIFFS IN ERROR v. THE LESSEE OF EDWARD WHITE, DEFENDANT IN ERROR.

The equitable owners of a tract of land on the river Ohio (the legal title to which was granted to John Cleves Symmes, from whom they had purchased the land before the emanation of the patent from the United States) proceeded in January 1789 to lay out on part of the said tract a town, now the city of Cincinnati. A plan was made and approved of by all the equitable proprietors, and according to which the ground lying between Front street and the river was set apart as a common, for the use and benefit of the town forever, reserving only the right of a ferry; and no lots were laid out on the land thus dedicated as a common. Afterwards, the legal title to the lands became vested in the plaintiff in this ejectment, who, under the same, sought to recover the premises so dedicated to public uses. Held: that the right of the public to use the common in Cincinnati must rest on the same principles as the right to use the streets; and that the dedication made when the town was laid out, gave a valid and indefeasible title to the city of Cincinnati.

Dedications of land for public purposes have frequently come under the consideration of this court, and the objections which have been raised against their validity, have been, the want of a grantee competent to take the title; applying to them the same rule which prevails in private grants, that there must be a grantee as well as a grantor. But that is not the light in which this court has considered such dedications for public use. The law applies to them rules adapted to the nature and circumstances of the case, and to carry into execution the intention and object of the grantor, and secure to the public the benefit held out and expected to be derived from and enjoyed by the dedication.

There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation.

Although the dedications of land for charitable and religious purposes, which it is admitted are valid without any grantee to whom the fee could be conveyed, are the cases which most frequently occur, and are to be found in the books; it is not perceived how any well grounded distinction can be made between such cases, and the case of a dedication of land for the use of the city of Cincinnati. The same necessity exists in the one case as in the other, for the purpose of effecting the object intended. The principle, if well founded in the law, must have a general application to all appropriations and dedications for public uses, when there is no grantee in esse to take the fee. But this forms an exception to the rule applicable to private grants, and grows out of the necessity of the case.

In this class of cases there may be instances where, contrary to the general rule, a fee may remain in abeyance until there is a grantee capable of taking, when the object and purpose of the appropriation look to a future grantee in which the fee is to vest. But the validity of the dedication does not depend on this: it will preclude the party making the appropriation from re-asserting any right

[City of Cincinnati v. The Lessee of White.]

over the land; at all events, so long as it remains in public use, although there may never arise any grantee capable of taking the fee.

The doctrine of the law relative to the appropriation of land for public highways, was applied to a public spring of water for public use in the case of M'Connell v. The Trustees of the Town of Lexington, 12 Wheat. 582.

All public dedications must be considered with reference to the use for which they are made; and streets in a town or city may require a more enlarged use of the land, in order to carry into effect the purposes intended, than may be necessary in an appropriation for a highway in the country. But the principle, so far as respects the right of the original owner to disturb the use, must rest on the same ground in both cases; and applies equally to the dedication of the common as to the streets. This was for the public use, and the convenience and accommodation of the inhabitants of Cincinnati; and doubtless greatly enhanced the value of the private property adjoining this common, and thereby compensated the owners for the land thus thrown out as public ground.

And after being thus set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an estoppel in pais, which precludes the original owner from revoking such dedication. It is a violation of good faith to the public, and to those who have acquired private property with a view to the enjoyment of the use thus publicly granted.

If the mere naked fee is in the plaintiff in ejectment, it by no means follows that he is entitled to recover possession of the land in his action. The action of ejectment is a possessory action, and the plaintiff, to entitle himself to recover, must have *the right of possession;* and whatever takes away this right of possession, will deprive him of the remedy by ejectment.

THIS was a writ of error, to the circuit court of the district of Ohio.

The case came before the court on a bill of exceptions, taken by the plaintiffs in error, the defendants in the circuit court, to the instructions given by the court to the jury on the request of the counsel for the plaintiffs in that court; and to the refusal of the court to give certain instructions as prayed for by the defendants below.

In the opinion of the court no decision is given on those exceptions, save only on that which presented the question of the dedication of the land in controversy for the use of the city of Cincinnati; which, and the facts of the case connected therewith, are fully stated in the opinion of the court. The arguments of the counsel in the case, on the matters of law presented by the exceptions, are therefore necessarily omitted.

The case was argued by Mr Storer and Mr Webster, for the plaintiffs in error; and by Mr Ewing and Mr Clay, for the defendants.

Mr Justice Thompson delivered the opinion of the Court.

The ejectment in this case was brought by Edward White, who is also the defendant in error, to recover possession of a small lot of ground in the city of Cincinnati, lying in that part of the city usually denominated the Common. To a right understanding of the question upon which the opinion of the court rests, it will be sufficient to state generally, that on the 15th of October in the year 1788, John Cleves Symmes entered into a contract with the then board of treasury, under the direction of congress, for the purchase of a large tract of land, then a wilderness, including that where the city of Cincinnati now stands. Some negotiations relative to the payments for the land delayed the consummation of the contract for several years. But on the 30th of September 1794, a patent was issued conveying to Symmes and his associates, the land contracted for; and as Symmes was the only person named in the patent, the fee was of course vested in him.

Before the issuing of the patent, however, and, as the witnesses say, in the year 1788, Mathias Denman purchased of Symmes a part of the tract included in the patent, and embracing the land whereon Cincinnati now stands. That in the same year, Denman sold one-third of his purchase to Israel Ludlow, and one-third to Robert Patterson. These three persons, Denman, Ludlow and Patterson, being the equitable owners of the land (no legal title having been granted), proceeded in January 1789 to lay out the town. A plan was made and approved of by all the proprietors; and according to which the ground lying between Front street and the river, and so located as to include the premises in question, was set apart as a common, for the use and benefit of the town for ever, reserving only the right of a ferry; and no lots were laid out on the land thus dedicated as a common.

The lessor of the plaintiff made title to the premises in question under Mathias Denman, and produced in evidence a copy, duly authenticated, of the location of the fraction 17 from the books of John C. Symmes to Mathias Denman, as follows: "1791, April 4, Captain Israel Ludlow, in behalf of Mr Mathias Denman of New Jersey, presents for entry and location a warrant for one fraction of a section, or one hundred and seven acres and eight-tenths of an acre of land, by virtue of

which he locates the seventeenth fractional section in the fourth fractional township, east of the Great Miami river, in the first fractional range of townships on the Ohio river; number of the warrant 192." In March 1795, Denman conveyed his interest, which was only an equitable interest, in the lands so located to Joel Williams; and on the 14th of February 1800 John Cleves Symmes conveyed to Joel Williams in fee, certain lands described in the deed which included the premises in question; and on the 16th of April 1800, Joel Williams conveyed to John Daily the lot now in question. And the lessor of the plaintiff, by sundry mesne conveyances, deduces a title to the premises to himself.

In the course of the trial several exceptions were taken to the ruling of the court, with respect to the evidence offered on the part of the plaintiff in making out his claim of title. But in the view which the court has taken of what may be considered the substantial merits of the case, it becomes unnecessary to notice those exceptions.

The merits of the case will properly arise upon one of the instructions given by the court, as asked by the plaintiff; and in refusing to give one of the instructions asked on the part of the defendant. At the request of the plaintiff, the court instructed the jury, "that to enable the city to hold this ground and defend themselves in this action by possession, they must show an unequivocal, uninterrupted possession for at least twenty years."

On the part of the defendants, the court was asked to instruct the jury, "that it was competent for the original proprietors of the town of Cincinnati to reserve and dedicate any part of said town to public uses, without granting the same by writing or deed to any particular person; by which reservation and dedication the whole estate of the said proprietors in said land, thus reserved and dedicated, became the property of, and was vested in the public, for the purposes intended by the said proprietors; and that, by such dedication and reservation, the said original proprietors, and all persons claiming under them, are estopped from asserting any claim or right to the said land thus reserved and dedicated." The court refused to give the instruction as asked, but gave the following instruction:

"That it was competent for the original proprietors of the

town of Cincinnati to reserve and dedicate any part of said town to public uses, without granting the same by writing or deed to any particular person; by which reservation and dedication the right of *use* to such part, is vested in the public for the purposes designated; but that such reservation and dedication do not invest the public with the fee."

The ruling of the court to be collected from these instructions was, that although there might be a parol reservation and dedication to the public of the *use* of lands; yet such reservation and dedication did not invest the public with the fee; and that a possession and enjoyment of the use for less than twenty years, was not a defence in this action.

The decision and direction of the circuit court upon those points, come up on a writ of error to this court.

It is proper in the first place to observe, that although the land which is in dispute, and a part of which is the lot now in question, has been spoken of by the witnesses as having been set apart by the proprietors as a common, we are not to understand the term as used by them in its strict legal sense; as being a right or profit which one man may have in the lands of another; but in its popular sense, as a piece of ground left open for common and public use, for the convenience and accommodation of the inhabitants of the town.

Dedications of land for public purposes have frequently come under the consideration of this court; and the objections which have generally been raised against their validity have been the want of a grantee competent to take the title; applying to them the rule which prevails in private grants, that there must be a grantee as well as a grantor. But that is not the light in which this court has considered such dedications for public use. The law applies to them rules adapted to the nature and circumstances of the case, and to carry into execution the intention and object of the grantor; and secure to the public the benefit held out, and expected to be derived from, and enjoyed by the dedication.

It was admitted at the bar, that dedications of land for charitable and religious purposes, and for public highways, were valid, without any grantee to whom the fee could be conveyed. Although such are the cases which most frequently occur and are to be found in the books, it is not perceived how any well

grounded distinction can be made between such cases and the present. The same necessity exists in the one case as in the other, for the purpose of effecting the object intended. The principle, if well founded in the law, must have a general application to all appropriations and dedications for public use, where there is no grantee in esse to take the fee. But this forms an exception to the rule applicable to private grants, and grows out of the necessity of the case. In this class of cases there may be instances, contrary to the general rule, where the fee may remain in abeyance until there is a grantee capable of taking; where the object and purpose of the appropriation look to a future grantee in whom the fee is to vest. But the validity of the dedication does not depend on this; it will preclude the party making the appropriation from re-asserting any right over the land; at all events so long as it remains in public use: although there may never arise any grantee capable of taking the fee.

The recent case of Beatty v. Kurts, 2 Peters, 256, in this court, is somewhat analogous to the present. There a lot of ground had been marked out upon the original plan of an addition to Georgetown, *"for the Lutheran Church,"* and had been used as a place of burial from the time of the dedication. There was not, however, at the time of the appropriation, or at any time afterwards, any incorporated Lutheran church capable of taking the donation.

The case turned upon the question, whether the title to the lot ever passed from Charles Beatty, so far as to amount to a perpetual appropriation of it to the use of the Lutheran church. That was a parol dedication only, and designated on the plan of the town. The principal objection relied upon was, that there was no grantee capable of taking the grant. But the court sustained the donation, on the ground that it was a dedication of the lot to public and pious uses; adopting the principle that had been laid down in the case of the Town of Pawlet v. Clark, 9 Cranch, 292, that appropriations of this description were exceptions to the general rule requiring a grantee. That it was like a dedication of a highway to the public. This last remark shows that the case did not turn upon the bill of rights of Maryland, or the statute of Elizabeth relating to charitable uses, but rested upon more general prin-

ciples; as is evident from what fell from the court in the case of the Town of Pawlet v. Clark, which was a dedication to religious uses; yet the court said this was not a novel doctrine in the common law.   In the familiar case where a man lays out a street or public highway over his land, there is, strictly speaking, no grantee of the easement, but it takes effect by way of grant or dedication to public uses.   And in support of the principle, the case of Lade v. Shepherd, 2 Stra. 1004, was referred to; which was an action of trespass, and the place where the supposed trespass was committed, was formerly the property of the plaintiff, who had laid out a street upon it, which had continued thereafter to be used as a public highway; and it was insisted on the part of the defendant, that by the plaintiff's making a street, it was a dedication of it to the public, and that although he, the defendant, might be liable for a nuisance, the plaintiff could not sue him for a trespass.   But the court said, it is certainly a dedication to the public, so far as the public has occasion for it, which is only for a right of passage; but it never was understood to be a transfer of his absolute property in the soil.

The doctrine necessarily growing out of that case, has a strong bearing upon the one now before the court, in two points of view.   It shows, in the first place, that no deed or writing was necessary to constitute a valid dedication of the easement. All that was done, from any thing that appears in the case, was barely laying out the street by the owner, across his land. And in the second place, that it is not necessary that the fee of the land should pass, in order to secure the easement to the public.   And this must necessarily be so from the nature of the case, in the dedication of all public highways.   There is no grantee to take immediately, nor is any one contemplated by the party to take the fee at any future day.   No grant or conveyance can be necessary to pass the fee out of the owner of the land, and let it remain in abeyance until a grantee shall come in esse; and indeed the case referred to in Strange considers the fee as remaining in the original owner; otherwise he could sustain no action for a private injury to the soil, he having transferred to the public the actual possession.

If this is the doctrine of the law applicable to highways, it must apply with equal force, and in all its parts, to all dedica-

tions of land to public uses; and it was so applied by this court to the reservation of a public spring of water for public use, in the case of M'Connell v. The Trustees of the Town of Lexington, 12 Wheat. 582. The court said; the reasonableness of reserving a public spring for public use, the concurrent opinion of all the settlers that it was so reserved, the universal admission of all that it was never understood that the spring lot was drawn by any person, and the early appropriation of it to public purposes; were decisive against the claim.

The right of the public to the use of the common in Cincinnati, must rest on the same principles as the right to the use of the streets: and no one will contend, that the original owners, after having laid out streets, and sold building lots thereon, and improvements made, could claim the easement thus dedicated to the public.

All public dedications must be considered with reference to the use for which they are made; and streets in a town or city may require a more enlarged right over the use of the land, in order to carry into effect the purposes intended, than may be necessary in an appropriation for a highway in the country; but the principle, so far as respects the right of the original owner to disturb the use, must rest on the same ground in both cases; and applies equally to the dedication of the common as to the streets. It was for the public use, and the convenience and accommodation of the inhabitants of Cincinnati; and doubtless greatly enhanced the value of the private property adjoining this common, and thereby compensated the owners for the land thus thrown out as public grounds.

And after being thus set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an estoppel in pais, which precludes the original owner from revoking such dedication. It is a violation of good faith to the public, and to those who have acquired private property with a view to the enjoyment of the use thus publicly granted.

The right of the public in such cases does not depend upon a twenty years' possession. Such a doctrine, applied to public highways and the streets of the numerous villages and cities that are so rapidly springing up in every part of our country, would be destructive of public convenience and private right.

[City of Cincinnati v. The Lessee of White.]

The case of Jarvis v. Dean, 3 Bingham, 447, shows that rights of this description do not rest upon length of possession. The plaintiff's right to recover in that case, turned upon the question whether a certain street in the parish of Islington had been dedicated to the public as a common public highway. Chief Justice Best, upon the trial, told the jury that if they thought the street had been used for years as a public thoroughfare, with the assent of the owner of the soil, they might presume a dedication; and the jury found a verdict for the plaintiff, and the court refused to grant a new trial, but sanctioned the direction given to the jury and the verdict found thereupon; although this street had been used as a public road only four or five years; the court saying, the jury were warranted in presuming it was used with the full assent of the owner of the soil. The point therefore upon which the establishment of the public street rested, was whether it had been used by the public as such, *with the assent* of the owner of the soil; not whether such use had been for a length of time, which would give the right by force of the possession; nor whether a grant might be presumed; but whether it had been used with the assent of the owner of the land; necessarily implying, that the mere naked fee of the land remained in the owner of the soil, but that it became a public street, by his permission to have it used as such. Such use, however, ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment.

In the present case, the fact of dedication to public use, is not left to inference, from the circumstance that the land has been enjoyed as a common for many years. But the actual appropriation for that purpose is established by the most positive and conclusive evidence. And indeed the testimony is such as would have warranted the jury in presuming a grant, if that had been necessary. And the fee might be considered in abeyance, until a competent grantee appeared to receive it; which was as early as the year 1802, when the city was incorporated. And the common having then been taken under the charge and direction of the trustees, would be amply sufficient, to show an acceptance, if that was necessary, for securing the protection of the public right.

But it has been argued, that this appropriation was a nullity, because the proprietors, Denman, Ludlow and Patterson, when they laid out the town of Cincinnati, and appropriated this ground as a common, in the year 1789, had no title to the land, as the patent to Symmes was not issued until the year 1794. It is undoubtedly true that no legal title had passed from the United States to Symmes. But the proprietors had purchased of Symmes all his equitable right to their part of the tract which he had under his contract with the government. This objection is more specious than solid, and does not draw after it the conclusions alleged at the bar.

There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation. This was the doctrine in the case of Jarvis and Dean, already referred to, with respect to a street; and the same rule must apply to all public dedications; and from the mere use of the land, as public land, thus appropriated, the assent of the owner may be presumed. In the present case, there having been an actual dedication fully proved, a continued assent will be presumed, until a dissent is shown; and this should be satisfactorily established by the party claiming against the dedication. In the case of Rex v. Lloyd, 1 Camp. 262, Lord Ellenborough says, if the owner of the soil throws open a passage, and neither marks by any visible distinction that he means to preserve all his rights over it, nor excludes persons from passing through it by positive prohibition, he shall be presumed to have dedicated it to the public.

At the time the plan of the town of Cincinnati was laid out by the proprietors, and the common dedicated to public use, no legal title had been granted. But as soon as Symmes became vested with the legal title, under the patent of 1794, the equitable right of the proprietors attached upon the legal estate, and Symmes became their trustee, having no interest in the land but the mere naked fee. And the assent of the proprietors to the dedication continuing, it has the same effect and operation as if it had originally been made after the patent issued. It may be considered a subsequent ratification and affirmance of the first appropriation. And it is very satisfactorily proved,

[City of Cincinnati v. The Lessee of White.]

that Joel Williams, from whom the lessor of the plaintiff deduces his title, well understood, when he purchased of Denman, and for some years before, that this ground had been dedicated as a public common by the proprietors. The original plat, exhibiting this ground as a common, was delivered to him at the time of the purchase. And when he afterwards, in the year 1800, took a deed from Symmes, he must, according to the evidence in the case, have known, that he was a mere trustee, holding only the naked fee. And from the notoriety of the fact, that these grounds were laid open and used as a common; it is fairly to be presumed, that all subsequent purchasers had full knowledge of the fact.

But it is contended that the lessor of the plaintiff has shown the legal title to the premises in question in himself, which is enough to entitle him to recover at law; and that the defendants' remedy, if any they have, is in a court of equity. And such was substantially the opinion of the circuit court, in the fourth instruction asked by the plaintiff, and given by the court, viz. " that if the said proprietors did appropriate said ground, having no title thereto, and afterwards acquired an equitable title only, that equitable title could not enure so as to vest a legal title in the city or citizens, and enable them to defend themselves in an action of ejectment brought against them by a person holding the legal title.

We do not accede to this doctrine. For should it be admitted, that the mere naked fee was in the lessor of the plaintiff, it by no means follows that he is entitled to recover possession of the common in an action of ejectment.

This is a possessory action, and the plaintiff, to entitle himself to recover, must have *the right of possession;* and whatever takes away this right of possession, will deprive him of the remedy by ejectment. Adams's Eject. 32. Starkie, part 4, 506, 507.

This is the rule laid down by Lord Mansfield in Atkins v. Horde, 1 Burr. 119. An ejectment, says he, is a possessory remedy, and only competent where the lessor of the plaintiff may enter; and every plaintiff in ejectment must show a right of possession as well as of property. And in the case of Doe v. Staple, 2 Durn. and East, 684, it was held, that although an outstanding satisfied term may be presumed to be surren-

dered, yet an unsatisfied term, raised for the purpose of securing an annuity, cannot, during the life of the annuitant; and may be set up as a bar to the heir at law, even though he claim only subject to the charge. Thereby clearly showing the plaintiff must have, not only the legal title, but a clear present right to the possession of the premises; or he cannot recover in an action of ejectment. And in the case of Doe v. Jackson, 2 Dowl. and Ryl. 523, Bailey, Justice, says, " an action of ejectment, which from first to last is a fictious remedy, is founded on the principle, that the tenant in possession is a wrong doer; and unless he is so at the time the action is brought, the plaintiff cannot recover."

If then it is indispensable that the lessor of the plaintiff should show a right of possession in himself, and that the defendants are wrong doers; it is difficult to perceive on what grounds this action can be sustained.

The later authorities in England which have been referred to, leave it at least questionable, whether the doctrine of Lord Mansfield in the case of Goodtitle v. Alker (1 Burr. 143), "that ejectment will lie by the owner of the soil for land, which is subject to a passage over it as the king's highway;" would be sustained at the present day at Westminster Hall. It was not even at that day considered a settled point, for the counsel on the argument (page 140) referred to a case, said to have been decided by Lord Hardwicke; in which he held that no possession could be delivered of the soil of a highway, and therefore no ejectment would lie for it.

This doctrine of Lord Mansfield has crept into most of our elementary treatises on the action of ejectment, and has apparently, in some instances, been incidentally sanctioned by judges. But we are not aware of its having been adopted in any other case where it was the direct point in judgment. No such case was referred to on the argument, and none has fallen under our notice. There are, however, several cases in the supreme court of errors of Connecticut, where the contrary doctrine has been asserted and sustained by reasons much more satisfactory than those upon which the case in Burrow is made to rest. Stiles v. Curtis, 4 Day, 328; Peck v. Smith, 1 Con. Rep. 103.

But if we look at the action of ejectment on principle, and

inquire what is its object, it cannot be sustained on any rational ground. It is to recover possession of the land in question; and the judgment, if carried into execution, must be followed by delivery of possession to the lessor of the plaintiff.

The purpose for which the action is brought, is not to try the mere abstract right to the soil, but to obtain actual possession; the very thing to which the plaintiff can have no exclusive or private right. This would be utterly inconsistent with the admitted public right. That right consists in the uninterrupted enjoyment of the possession. The two rights are therefore incompatible with each other, and cannot stand together. The lessor of the plaintiff seeks specific relief, and to be put into the actual possession of the land. The very fruit of his action, therefore, if he avails himself of it, will subject him to an indictment for a nuisance; the private right of possession being in direct hostility with the easement, or use to which the public are entitled; and as to the plaintiff's taking possession subject to the easement, it is utterly impracticable. It is well said, by Mr Justice Smith in the case of Stiles v. Curtis, that the execution of a judgment in such case, involves as great an inconsistency as to issue an habere facias possessionem of certain premises to A., subject to the possession of B. It is said, cases may exist where this action ought to be sustained for the public benefit, as where erections are placed on the highway, obstructing the public use. But what benefit would result from this to the public? It would not remove the nuisance. The effect of a recovery would only be to substitute another offender against the public right, but would not abate the nuisance. That must be done by another proceeding.

It is said in the case in Burrow, that an ejectment could be maintained because trespass would lie. But this certainly does not follow. The object and effect of the recoveries are entirely different. The one is to obtain possession of the land, which is inconsistent with the enjoyment of the public right; and the other is to recover damages merely, and not to interfere with the possession, which is in perfect harmony with the public right. So, also, if the fee is supposed to remain in the original owner, cases may arise where perhaps waste or a special action on the case may be sustained for a private injury to such owner. But these are actions perfectly consistent with

the public right.    But a recovery in an action of ejectment, if carried into execution, is directly repugnant to the public right.

Upon the whole, the opinion of the court is, that the judgment must be reversed, and the cause sent back with directions to issue a venire de novo.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Ohio, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said circuit court in this cause be and the same is hereby reversed, and that this cause be and the same is hereby remanded to the said circuit court, with directions to award a venire facias de novo.