Allen, J.
The plaintiffs do not allege, or attempt to prove, any special contract with the owners of the river range of lots for the easement claimed. If the easement was granted, it was for the benefit of the public generally. The objections, therefore, founded on the statute of frauds, do not, it seems to me, apply to the.case. A grant or writing is not necessary to *191 constitute a valid dedication of an easement to the public. Where streets and alleys have been opened by the owner, and used by the public, with his assent, as a public thoroughfare for years, a dedication of the easement may be presumed. Jarvis v. Dean, 3 Bing. 447. Lade v. Shepherd, 2 Strange 1004. City of Cincinnati v. White, 6 Peters 431. Nor is it essential, in the investigation of this case, to determine where the fee rests. In Mayo v. Murchie, 3 Munf. 358. the court decided that parol testimony was admissible, in aid of the inference deducible from the printed proposals, to establish an equitable title of the inhabitants of the town as tenants in common, and decreed a release to the trustees, for the use of the inhabitants, of the land dedicated. In the case of the City of Cincinnati v. White, 6 Peters 431. the court seemed to be of opinion that cases of this kind are exceptions to the general rule requiring a grantee, and that “ there may be instances where the fee may remain in abeyance until there is a grantee capable of taking, where the object and purposes of the appropriation look to a future grantee in whom the fee is to vest. But” (continues the court) “ the validity of the dedication does not depend on this; it will preclude the party making the appropriation from reasserting any right over the land, at all events so long as it remains in public use, although there never may arise a grantee capable of taking the fee.” Nor is any particular form or ceremony necessary in the dedication of the land to public use. S. C. 440.
If, then, no deed or writing be essential to such an appropriation, and its validity do not depend upon the existence of a grantee, it remains to enquire whether the evidence in this record shews such an appropriation to the public, as precludes revocation by the original owner.
*192 On this point I have felt much difficulty. It may be collected from the whole testimony, that the proprietor did not intend to part with his entire interest in the strip of land in question. If a canal should be constructed, the right was reserved to permit it to pass through the strip; and in that event, as he would have reserved it for that purpose, he must have been regarded as the owner of the fee in respect to that subject, and entitled to compensation as such. He also, according to the greater part of the witnesses, reserved the right to conduct a millrace through it: and for this purpose it must have been regarded as private property. In either event, the easement to the public in this narrow strip would have been of little or no value, viewing it as a common. Perhaps the general terms used by witnesses speaking from memory at the distance of many years, can be best understood by a consideration of the circumstances attending the transaction. The use of this strip, except where the cross streets terminated, so as to continue them to the river, could be of little importance to the citizens of the town. But free access to the river was essential to the comfort of all. By the plan of the town which was exhibited, the cross streets terminated at the line constituting the artificial boundary of the town on the north side. Bidders might well hesitate, who for the first time, on seeing the plat, discovered that they might at any moment be cut off from the water. Accordingly, the crier says that the strip was considered a great injury, on account of the water. One of the witnesses speaks of Merry's engagement to erect bridges at the cross streets, over any millrace he might conduct along the strip; another understood him to promise free access to the water. If the declarations of the proprietor are to be understood w'ith reference to the free access to the water, they are rendered consistent with the privileges he certainly intended to retain in the land; privileges which would *193 be inconsistent with the unreserved appropriation of the subject to the public. And I should incline to the opinion that if the case rested here, this last would be the proper construction to be given to the testimony. But there are circumstances which it seems to me are decisive of this question, and remove the doubts which the parol testimony, if it stood alone, might create.
In the first place the plat of the town excluded the strip : the rear of the river range of lots was bounded by an artificial line. The case of Barclay &c. v. Howell's lessee, 6 Peters 498. was a controversy respecting a strip of ground in the city of Pittsburg, along the Monongahela river. From the plan of the town it appeared that all the streets and alleys were distinctly marked by the surveyor, and their width laid down, except Water street, which lies along the river. No artificial boundary was laid down as the limit of this street: its northern boundary was given, but the space to the south was left open to the river. The court, commenting on this fact, said, “If a line had been drawn in the plat along the southern limit of this street, there would have been great force in the.argument that the ground between such limit and the water was reserved by the proprietors. This would have been the legal consequence from such a survey, unless the contrary had been shewn.” In the case under consideration, there was such artificial boundary; and the evidence leaves it doubtful to what extent the proprietor agreed to relinquish his right to the ground between it and the river.
In the second place, the proprietor continued in possession of the strip. One part of it was enclosed and cultivated by him, and houses were erected by him on it; on another part, he permitted persons to make brick. He lived nine or ten years after the sale, and during the whole period exercised acts of ownership over the property, without any complaint on the part of the trustees of the town, or the citizens. The use of property by *194 the public with the assent of the owner, will, under particular circumstances, justify the presumption of a dedication to the public, provided the use has continued so long that private rights and the public convenience might be materially affected by an interruption of the enjoyment. But any acts of ownership would repel the presumption. Thus, in Roberts v. Karr, 1 Camp. 262. note, the placing of a bar across the street, to prevent the passage of carriages, was held to rebut the presumption of a dedication. In Lethbridge v. Winter, 1 Camp. 263. note, it appeared that a gate bad recently been put up in a place where a gate formerly stood, but where for the last twelve years there had been none: this was held to destroy the presumption. The principle of these eases applies, it is true, to dedications presumed from the long acquiescence of the owner, and not to express dedications : but where, as in this case, the evidence of the express dedication is uncertain, such acts of ownership, exercised with the acquiescence of those interested to resist them, furnish persuasive evidence that the dedication was not understood, at the time, to be as extensive as some of the declarations now-deposed to would imply. With the arrangement after the death of dr. Merry, by which an alley was laid off adjoining the rear of the lower range of lots, all seemed satisfied, and the residue of the strip was then sold without objection. If the claim now set up was valid, then was the time to assert it. The citizens probably preferred securing a certain benefit, to the assertion of a questionable right. Whatever the claim was, it seems to me that it must, after these transactions, be considered as abandoned in respect to all the strip between the different cross streets. These streets, having been continued across the strip to the river, and being necessary to afford that free access to the water, which, under any view of the testimony, wras assured to the citizens, have been dedicated to the public. To the use *195 of them they are clearly entitled, both from the express declaration of the proprietor at the time of the sale, and his subsequent assent to their enjoyment. It does not appear that any attempt has been made to obstruct the use of them. It is true, that by an agreement between the purchasers of the strip, they seem to consider these as private ways. But they have remained open for the public use. I think it would have been premature to institute proceedings to protect the public in the enjoyment of this easement, until some act of disturbance was shewn. I therefore think the court should have dismissed the bill, without prejudice to the right of the plaintiffs, and other citizens of the town, to the use of the cross streets as extended through the slip of ground in question to the river, in the event of any attempt hereafter to disturb them in the enjoyment thereof; and, under all the circumstances, without costs.
The other judges concurring, a decree was entered reversing the decree of the circuit court with costs, and dismissing the bill, without costs in the court below, and without prejudice, as declared in the foregoing opinion.