Totten, J.,
delivered the opinion of the court.
The defendant, Scott, was indicted in the circuit court of Fayette, June Term, 1852, for obstructing a public road; was convicted and fined, June Term, 1853; and his motion for a new trial being overruled, he appealed in error to this court.
The road in question, extends from “'Macon to Martin’s bridge; ” is a cross-road, and opens a way from one public road to another. It passes in a diagonal course, over a six hundred and forty acre tract of land, owned by the heirs of Malachi Yentriss, until December, 1850, when it was sold to the defendant, Scott, the present owner, and is very inconvenient and injurious to the owner of that land. The road was opened in Dec., 1848, under an order of the county court, by Trotter and Scott. An overseer was appointed in May 1851, who worked on the road, and kept it in order, and it was used by the public until it was obstructed and closed by defendant, on said six hundred and forty acres of land, in February, 1852.
It appears also, that the county court, at the July Term, 1851, appointed a jury .of view to make report on the propriety of a change in the road, where it passes over defendant’s land. They reported to January Term, 1852, in favor of a change in the road; but it was not confirmed, and no order taken upon it.
*631 At this term, however, the county court appointed the defendant, -Scott, overseer of the new road, viewed hy said jury, and he proceeded to open it and put it in order, which fact he certified, as overseer, to the county court, hut the court, at its June Term, 1852, refused to recognize the new road, and ordered that the old road he continued and kept in order as a public road.
The new road is a half mile farther, accommodates the same line of travel, is so laid out over defendant’s land as to do it comparatively little injury; and being opened hy defendant and put in order, he thereon considered that he had a right to obstruct and close the old road.
The State also insists that the old road was legally established and continued hy dedication to the public use; and proof was adduced to support this position. It seems that Mrs. Yentriss, one of a number of heirs to whom the land descended, on being applied to, consented that a public' road be made over her land; but it was not laid out, nor the line of the road fixed or agreed upon. She died in 1847, and we have seen that the road was opened in 1848. It also appears that the defendant was active in procuring this road to be opened and established.
1. As to the action of the county court in making said orders, we may observe, that it was not, in itself, valid and sufficient to establish either the old road or the new, because of incompetency of the court when some of the orders were made, and other defects and omissions in the proceeding. This seems to be conceded in the argument, and may therefore be assumed.
*632 2. But it is insisted for tlie State, that the old road was legally established by dedication to the public use. The charge of the judge upon this point, was very full, and in the main, perfectly correct. And he left it to the jury to say whether there was a dedication of a right of way by Mrs. Yentriss, or by the defendant after he became the owner of the land. But as to the defendant, he said: “ If the use of the road by the public, after he became the owner, was acquiesced in by him, the public would thereby acquire a right which he could not afterwards recall;” and further, in substance, that if the defendant, not then being owner of the land, was active in causing said road to be opened for the public use, he was thereby estopped, when he became such owner, to deny that the road was legally established.
The counsel for the defendant insist, that in these instructions to the jury there was error, for which the judgment should be reversed.
It is a well settled doctrine of the common law, that a public way may have a legal existence upon the principle of dedication. Lade vs. Shepherd, 2 Strange, 1004. Rugby Charity vs. Merriweather, 11 East., 376, note. King vs. Wright, 3 Barn. & Adol., 681. And the principle has been admitted and recognized in this State. Young vs. The State, 9. Yer. R., 390. If a man lay out a street or public way over his land, for the general public, and it be accepted and used by the public in the manner intended, that is a valid dedication of the easement. It consists in the right of way over the land of another, and not of an interest in the land itself; that remains in the owner of the fee, unaf *633 fected by the dedication; Nor is any deed or writing necessary to constitute a valid dedication of the easement. It may exist by aot in pais and estoppel upon the owner of the land. The right to the easement, does not depend upon its use by the public for any definite time; “but it ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment.” City of Cincinnati vs. lessee of White, 6 Peters, 431. Jarvis vs. Dean, 3 Bingham, 447.
In Woodger vs. Hadden, 5 Taunt., 137, Chambre, Judge, says: “No particular time is necessary for evidence of a dedication; it is not like a grant presumed from length of time. If the act of dedication be unequivocal, it may take place immediately; for instance, if a man builds a double row of houses, opening into an ancient street at each end, making a street, and sells or lets the houses, that is instantly a highway.”
Time is a material element in the question of dedication, when the right rests upon circumstances from which the consent of the owner is to be inferred. The use of a way is not, in itself, proof of dedication. It may be without the owner’s consent, or against his will, or merely temporary.' If the user be for a length of time, that is a circumstance tending to show the owner’s consent, and the fact of dedication. But it is not conclusive, and may be explained.
Now, to test the present case by these principles: Pirst, the dedication must be by the owner of the soil. Mrs. Yentriss was one of the owners, and a tenant in common with several others, who did no act tending to prove their concurrence in the supposed dedication. *634 Without their consent, also, the dedication could have no legal existence. Nor do we think that the consent of Mrs. Yentriss was of such certain and definite character as to be of any validity. The road was not marked out, nor the line of it agreed upon; and in the absence of proof, we cannot presume her consent to a line of road so evidently and greatly injurious to her property. We think it clear, that there was no dedication by the act of Mrs. Yentriss. It was not, therefore, a public way, legally established in Dec., 1850, when the defendant, Scott, became owner of the land.
The next enquiry is, was there any dedication by him ? We consider it very evident,' from the facts before stated, that he had strong and urgent objections to the road, from the time he became owner of the land over which it passed. There is no proof tending to show a positive, affirmative consent to its continuance; nor can it . be inferred from a supposed silent acquies-' cence for some six months, when he took steps to open a new road, and close the old one. He may have supposed that the old road was legally established; but in that he was mistaken, and that mistake may have been the cause of his acquiescence; but it could not take away his rights.
In this view of the case, it is clear that the former owners of the land had a right to close the road at pleasure; and when the defendant became owner under them he had the same right, unless he was estopped to assert his right in the manner stated by the judge to the jury.
We see no ground upon which the estoppel can rest. The defendant, it is true, was active in causing *635 the road to be opened in 1848. It was done without authority; was a trespass upon the owners of the land, for which he was liable; and the road was never legally established.
Its use by the piiblic was a continual wrong to the owners of the land up to the time when it was sold to defendant. Did it, then, become a public way, in which the public, or county, had a legal interest? Ve think not, most clearly.
As to the estoppel, it can only exist when it is mutual; and here, if it operate upon the defendant, so, likewise, it must operate upon the county. If the defendant is estopped to say the truth, that is, that the road was not legally established, so is the county estop-ped, and it becomes bound to regard the road as legally established, and to keep it in order. The right to a public way is thus made to rest upon a trespass and wrong done to the rights of others; and if the right be contested, it can only appear by proof, founded in these facts.
We think there was no estoppel, and that it was competent for the defendant to aver the truth, that the road, as a public way, never was legally established. In this view, it was not illegal for him to close it.
The judgment is reversed, and the cause remanded.
Judgment reversed.