## COMMONWEALTH *vs.* WILLIAM FISK & another.

n April 1806, D. and others granted to the Cambridgeport Meeting-house Corpora
tion two acres of land, " on the conditions and for the purposes hereafter men-
tioned, and no other, to wit, the said corporation shall have a right to keep and
continue a meeting-house thereon, where the one now building stands, and to re
build and enlarge the same in any way, provided no part thereof shall ever be
brought nearer than ten feet distance from Columbia Street: The county of Mid-
dlesex, or any other county within the limits of which said premises should here-
after be, shall have a right to build and forever continue a brick building on the
premises opposite to the meeting-house, viz. it shall stand about half way," &c.
" and no part thereof shall be more than sixty feet from Boardman Street, and
which building shall be for a court house and offices for the purposes of said county,
and for no other purpose whatever: Provided, however, that if such house should
not be built within ten years from the date hereof, then the said right to said
county shall cease: There shall never be erected on the premises any other build-
ing, or in any other manner, than as aforesaid; and such part of the said land as
shall not be so built on shall be kept and remain an open area, for public conve-
nience. To have and to hold the aforegranted premises respectively, to the said
Meeting-house Corporation, and to said county, their successors and assigns, in
manner, on condition, and for the respective purposes aforesaid only: " Said cor-
poration conveyed the land to the Cambridgeport Parish, to hold on the same con-
ditions, as above stated. The land, for several years afterwards, was used only for
the purposes of the meeting-house: It was not enclosed, and was passed over by
people at their pleasure. The meeting-house went to decay, and in 1833, it was
taken down by said parish, and a new meeting-house was built by the parish at
another place eighty rods distant from the old site: The county of Middlesex
never accepted the grant aforesaid, nor erected any building on said land: In
1834, F. & R., claiming under D. and others, enclosed the land with a high fence
and kept it so enclosed, for several years.

*Held,* on the trial of an indictment against F. & R. for a nuisance caused by the
erection and continuance of said fence, that the dedication of " an open area for
the public convenience " was subordinate and incidental to the main object of the
grant, to wit, the establishment of the public buildings thereon; and that as the
main object had failed, this incidental part had also failed; and that F. & R. had
a legal right to enclose the land.

WILLIAM FISK and Aaron Rice were indicted for levying a
nuisance. The indictment alleged that there was a certain
square piece of land, situate in Cambridge, and containing about
two acres, which, long before the 10th of June 1841, had been,
and still ought to be, kept and to remain an open area, and
public common, for the general use and convenience of all the
citizens of the Commonwealth; and that the defendants, on said
10th of June, did unlawfully and injuriously erect, build, and
put, upon and around said piece of land, a strong and high

fence, and did continue, keep and maintain the same until the day of the finding of said indictment; whereby the said piece of land was, during all the time aforesaid, obstructed and shut up, &c.

Upon the evidence introduced at the trial in the court of common pleas, the jury were instructed, *pro formâ*, that the defendants had no right to enclose said piece of land. The jury thereupon found them guilty, and they alleged exceptions to the instructions.

The facts of the case, and the grounds of argument, are fully stated in the opinion of the court.

*Buttrick*, for the defendants.

*Livermore*, for the Commonwealth.

HUBBARD, J.   The object of this indictment, which is prosecuted at the instance of some of the inhabitants of Cambridgeport, is to try the right of the public to keep open a piece of land for their convenience, adjoining the site of the old Cambridgeport meeting-house, which land the defendants, claiming title thereto, have enclosed with a fence, and otherwise occupied.

The history of the transactions, out of which this claim of right grows, is as follows :   In or near the year 1804, when the speculations commenced for enlarging the town of Boston, by annexing a part of Dorchester on the south, filling up the mill-pond on the north, and creating Broad and India Streets, and India Wharf, on the east, Rufus Davenport and Royal Makepeace entered into a similar speculation for making a large village, not far from the terminus of West Boston Bridge, on the Cambridge side.   For this purpose, they made considerable purchases of land of Andrew Boardman, J. L. Austin, and others; and in compliance with the beneficent usages and feelings of a New England community, on laying out a town or village, they soon after made provision for the erection of a meeting-house ; and in June 1805, procured an act incorporating them for that object, by the name of the Cambridgeport Meeting-house Corporation.   (*St.* 1805, *c.* 25.   3 Special Laws, 620.)

Among other movements of that day, was also one for the removal of the court house from old Cambridge.   And Daven

port and Makepeace, believing it would be a great benefit to them to have it erected in their contemplated village; made provision also in that behalf.

In pursuance of their plans, Davenport and Makepeace, and others whom they had associated with them, procured from Andrew Boardman, (who had previously agreed, in his deed of June 25th 1804, to locate a square or place for a meeting-house or market-place,) and Henry Hill, two pieces of land, lying contiguous to each other, for the purpose of having erected on them a meeting-house and court house ; and to carry the plan into effect, they afterwards made a deed of the land, bearing date April 15th 1806, to the Cambridgeport Meeting-house Corporation. This deed, after describing and conveying the land by metes and bounds, contains the following provisions : " On the conditions and for the purposes hereafter mentioned, and no other ; to wit, the said corporation shall have a right to keep and continue a meeting-house thereon, where the one now building stands ; and to rebuild and enlarge the same in any way, provided no part thereof shall ever be brought nearer than ten feet distance from said Columbia Street. The county of Middlesex, or any other county within the limits of which said premises should hereafter be, shall have a right to build, and forever continue, a brick building on the premises opposite to the meeting-house, viz. it shall stand about half way between Canal Street and Concord Street, and no part thereof shall be more than sixty feet from Boardman Street,.and which building shall be for a court house and offices, for the purposes of said county, and for no other purpose whatever. Provided, however, that if such house should not be built within ten years from the date hereof, then the said right to such county shall cease. There shall never be erected on the premises any other building, or in any other manner than as aforesaid, *and such part of the said land as shall not be so built on shall be kept and remain an open area for public convenience.* The directors of said Meeting-house Corporation, or such other officers as shall, by said corporation, be legally appointed for the purpose, or in case of default in said directors or officers, then. during such default,

any other persons, duly authorized by any regular established Religious Society of the meeting-house aforesaid, shall be guardians and overseers of the premises, and may permit or erect, from time to time, fences, set out trees, and alter, remove, and take away the same, provided, excepting the brick meeting-house, and building for the county purposes, if such should be built, and provided that no obstruction shall ever be caused or permitted to the entrance at either end of the said meeting-house, or to any entrance into such building for county purposes." And the habendum is, " to have and to hold the aforegranted premises, respectively, to the said Meeting-house Corporation and to said county, their successors and assigns, in manner, òn condition, and for the respective purposes aforesaid only."

In March 1808, the members of the Cambridgeport Meeting-house Corporation were incorporated into a parish, by the name of the Cambridgeport Parish. (*St.* 1807, *c.* 73. 4 Special Laws, 146.) On the 14th of April 1808, Messrs. B. and J. L. Austin, who were also large owners of land at Cambridgeport, gave a piece of land to the Cambridgeport Meeting-house Corporation, for a parsonage lot, for the use of the minister and ministers who should preach in the house then built, and in future houses to be built on the same site. And on the 2d of February 1809, the Cambridgeport Meeting-house Corporation conveyed to the Cambridgeport Parish both pieces of land, to hold upon the same conditions upon which they were conveyed to said Meeting-house Corporation.

The meeting-house then built was used for many years; but a rival company at Lechmere Point, or East Cambridge, proved the successful competitor for the court house, and in consequence of it, the land given by Davenport and others, by their deed of April 15th 1806, was not used for any purpose but the meeting-house. It was never enclosed, but lay open, and was passed over by the citizens at their pleasure.

In a few years the meeting-house itself was suffered to go to decay, and in 1833 it was taken down by the parish, and a new house was erected by them in another place, a quarter of a mile

from the old site. Since that time, the parish have not occu-
pied any part of the lot, but they left it unenclosed. In the
year 1834, the defendants took possession of it, and enclosea
it; since which time, there has been a footpath through it.

In the year 1838, Jane Austin, one of the devisees of Benjamin
Austin, recovered possession of a portion of the parsonage lot, in
a suit against the parish for a breach of the condition in the deed ;
it being held by the court that there was a forfeiture of the estate.
*Austin* v. *Cambridgeport Parish,* 21 Pick. 215. In that case
many of the facts here stated are recited.

· The present defendants claim title, under a part of the grant
ors to the Cambridgeport Meeting-house Corporation, and con-
tend that they have a right to fence in and occupy the land, as
they see fit. And the question before the court is, what con-
struction is to be given to the clause of the deed of April 15th
1806, which provides that " such part of the land as shall not
be built upon shall be kept and remain an open area for public
· convenience."

It is contended, on behalf of the Commonwealth, that the
grantors had different objects in view ; one, the erection of a
meeting-house ; the second, the securing of the location of the
court house ; and the third, a grant to the community of an area,
or common, for the public benefit : That these were not only
separate objects, but independent of each other ; and that this
is manifest from the language of the grant, and from the fact
that the grantees were restrained as to the amount of land to
be covered by the buildings, and in their positions on the lot,
so that the area might not be encroached upon.

The ground assumed is, that this was a dedication to the public
of a piece of land for an area or common for their benefit ; and
that the time it lay open, connected with the use made of it, is
evidence of their acceptance of the grant, and has given them a
legal right now to claim it.

On the part of the defendants, it is contended that the county
never availed itself of its privilege ; that the parish have for-
feited their rights, and that the public acquired no right in the
premises independent of the other grants ; that the right claimed

is void for vagueness and uncertainty, and because no grantee is named.

In regard to the last mentioned objection, that the grant was void for uncertainty, no grantee being named, we are clearly of opinion that dedications of land for public purposes may be made without naming a grantee to take immediately ; and for the same reasons, and upon like principles, that ways and streets may be and are dedicated to the public ; and that such rights of way, and rights in land, may be as well acquired by acts *in pais* as by a formal grant. *Cincinnati* v. *White,* 6 Pet. 431. *Jarvis* v. *Dean,* 3 Bing. 447. It was formerly doubted whether the law in regard to the dedication of ways was of any practical application in this Commonwealth. *Hinckley* v. *Hastings,* 2 Pick. 162. But it is now well established that a way may as well be created or acquired by dedication, as by a formal laying out under the statute. *Hobbs* v. *Inhabitants of Lowell,* 19 Pick. 405. *Valentine* v. *City of Boston,* 22 Pick. 75. Lapse of time is among the elements that constitute such a dedication of land for public uses, but it is not the basis upon which it necessarily rests.

In the case at bar, however, it is not of importance to consider at large the various decisions on the subject of the dedication of ways and plats of ground to the public, nor to discuss the principles of those decisions, as the construction to be given to the deed of April 15th 1806 does not require it. The design of the grantors was to provide a suitable piece of ground for the meeting-house, with sufficient space around it to make it both quiet and attractive ; and also to offer to the county such a site for the court house and county offices, in an open square to be rendered pleasant and grateful by shade trees, and freed from the annoyance of neighboring buildings, as might induce them to accept it. And if the county had accepted the grant, and erected their court house on the allotted premises, we have no doubt, as connected with it, the space of ground would have been dedicated for the uses intended by the donors. But we are of opinion that this dedication of an area for public use was subordinate and incidental to the establishment of the public

buildings. There was no design, that we perceive, to open a square for the use of the public, whether the buildings were erected or not. The language is, "there shall never be erected on the premises any other building, or in any other manner, than as aforesaid, and such part of the said land as shall not be so built on shall be kept and remain an open area for public convenience." The buildings designed to be erected were both, in the common acceptation, public buildings, and one of them peculiarly so. The terms here used, "public convenience," are connected with, and qualified by, the other terms referring to the buildings to be erected; and the convenience provided is for those who have occasion to use the buildings. If the object had been to open and dedicate a public square, it would, we think, have been provided for specifically, and would have been secured by the habendum in the deed; and the right to erect certain public buildings upon it might have been also granted, as an incident. But the reverse is the case. The object is to provide land for the buildings, and so much land as shall induce the acceptance of it for that purpose; so that the provision in respect to the open space is rather a provision restricting and limiting the right of use, than the making of an independent grant. Suppose that neither of the public buildings had been erected, and the land had revested in the grantors, and they or their assigns had erected private dwelling-houses on the land designated for the meeting-house and court house; could it be contended that this open area was to be maintained for the use of the public? What interest had the public in it, when the residue of the land was diverted to private uses? As well might it be contended that the whole land was to be taken for an area, if the buildings were not erected.

But, to take the facts as they exist. The county of Middlesex never accepted the offer of the land, within the time limited for its acceptance; the proprietors of the meeting-house have left it for a more convenient and central site; and there are no public buildings, for the convenience of which the land is to be left open. The contemplated objects have failed to be accomplished, and the incidents connected with those objects must

fail with them. The provision for an open area was a mere privilege annexed to the grant for the buildings, and could only be called into being by the performance of the condition; and if it went into effect, it received its life from the grant, and, being thus created, would expire on the forfeiture of the condition, or by the abandonment of the land so far as related to the erection and maintenance of public buildings upon it. If the area had been fenced out, and the trees planted, and a square maintained, while the meeting-house existed, a question of fact, as to the dedication of it to the public, in consequence of the use, might perhaps have arisen. But the land was never fenced, nor laid out as a square or public area. Being of little value, it lay unenclosed, and was passed over at pleasure. But such passing over unenclosed lands creates no title to them. The persons passing over them are not trespassers, but they acquire no rights; and the lawful owners may fence them in, or otherwise use them, at their own pleasure. *Kilburn* v. *Adams*, 7 Met. 33.

It was argued, in behalf of the Commonwealth, that the Cambridgeport Parish had neither forfeited their title to the meeting-house lot by any formal surrender of it to the grantors, nor lost their right by mere non user; and therefore, so long as their right exists, so long the public have a right to the open space. To which the defendants reply, that the acts of the parish amount in law to a forfeiture of the land; that the incidental right of the public died with it; and that the question of forfeiture was virtually determined in the case of *Austin* v. *Cambridgeport Parish*. It is to be observed, however, that the language of the two deeds is far from identical. They may therefore receive a very different construction. But we do not think it necessary to settle in whom the fee in this land is now vested. All the parties who are interested in the question are not before the court, and this is far from a convenient process to decide upon the titles to real estate. It is sufficient, we think, for the settlement of this case, that the county of Middlesex never accepted the grant; that the Cambridgeport Parish first suffered their

21 *

meeting-house to go to decay, and then pulled it down and erected another in a different place, and have never since exercised any act of ownership over the land ; that no area or square was ever laid out or maintained ; that the defendants are in possession, claiming title from those who were the proprietors of the land, before the gifts upon condition were made, and therefore are rightfully in possession, unless that right can be successfully contested by the Cambridgeport Parish.

It was also contended by the counsel for the Commonwealth, in his able argument, that if the dedication of the open area was limited to the use of the meeting-house, then the use of the land belongs to the public, till the heirs of Andrew Boardman claim it, so far at least as the east half of the lot is concerned, as that part did not pass from those grantors under whom the defendants claim ; and so though the right should be held to be incidental, still the right lies with the heirs of Boardman, and they only, and not the defendants, can successfully contend with the Commonwealth. But the answer to the argument is, that though Boardman intended that his lot should be appropriated for a site for the meeting-house, as appears by his deed of June 25th 1804, though not for an area or square, yet his conveyance was not to the Cambridgeport Meeting-house Corporation, but to Davenport and others in fee, to whom Hill also conveyed the other contiguous lot; and they, as tenants in common, conveyed the lots to that corporation, subject to the conditions mentioned. We think, therefore, that the defendants, claiming under deeds from a part of the tenants in common, acquired such a right of entry in the premises as cannot be questioned in this indictment, and that their entry enures for the benefit of all the tenants in common.

*Verdict set aside, and a new trial granted.*