ALBERT BORK ET UX., DEFENDANTS IN ERROR, v. THE
UNITED NEW JERSEY RAILROAD AND CANAL COM-
PANY ET AL., PLAINTIFFS IN ERROR.

Submitted December 8, 1903—Decided February 29, 1904.

1. The owner of the fee of land, subject to an easement of a public
highway, may maintain ejectment against an intruder who wrong-
fully appropriates the same to a purpose wholly foreign to the
easement, but his recovery of possession will be subject to the
easement in question.

2. The laying of a steam railway longitudinally in a street, unless
by authority of a legislative grant, express or implied, will be
regarded as such an exclusive and wrongful appropriation of that
part of the street, to a purpose foreign to the easement, as to
sustain such action of ejectment by the abutting owner against
the company.

On error to the Supreme Court.

For the plaintiffs in error, *Joseph H. Gaskill.*

For the defendants in error, *Francis D. Weaver.*

The opinion of the court was delivered by

HENDRICKSON, J. This writ brings up for review a judg-
ment of the Supreme Court entered upon a *postea* from the
Camden Circuit.

The action is ejectment and was brought by the plaintiffs,
abutting owners on that part of Front street, in the city of
Camden, between Clinton street and Kaighns avenue, in
order to secure the removal of the track and roadbed of the
defendants, laid down by them in front of plaintiffs' premises
for steam railway purposes. The use of the track was limited
to the operation of freight cars thereon.

A verdict for the plaintiffs of six cents damages was di-
rected by the learned trial judge. A request of the defend-
ants for an instruction to the jury that no recovery could be
had for the premises described in the declaration was refused.

To these rulings exceptions were taken by the defendants
and sealed and error has been duly assigned thereon.

The premises embraced in the suit was the strip of land between the centre line of the street and the plaintiffs' property line, containing the track and roadbed of the defendants, having a length of about thirty-seven feet and a width of two and one-half feet from the centre line, subject to the public easement to and over said land.

The first ground urged in support of these assignments of error is that ejectment will not lie to recover possession of a portion of a public street, actual possession being inconsistent with the public easement and constituting a nuisance which would render the plaintiffs liable to indictment. The defendants cite as authority for this doctrine *Cincinnati* v. *White,* 6 *Pet.* 431; 4 *Day* (*Conn.*) 328.

But the authority of the former case would be more persuasive if the point here referred to and there discussed had been necessary to the decision. For it will be remembered that the case was determined against the plaintiff in his suit to recover a plot of ground contained in what was known as a city common, on the ground that it had been dedicated to public use by a previous grantor in the plaintiff's chain of title. But the law upon the subject now under discussion has so long been settled in this state against the contention of the defendants that it would seem to be now too late to question it.

In 1858 a suit in ejectment was brought by the owner of the fee in a turnpike road, which carried with it the public easement of the highway, against a defendant, who was the tenant of a toll-house built upon part of the highway.

Other questions were involved but Chief Justice Green, in delivering the opinion of the Supreme Court, said: "It is admitted that ejectment will lie by the owner of the soil for a part of the highway illegally appropriated by a third party to his own use. So the law is settled." The case went to this court afterwards and there was a reversal, but no opinion was filed. No question was raised, however, as to the propriety of the form of action and the ejectment suit prevailed. See *State* v. *Laverack,* 5 *Vroom* 201; *Burnett* v. *Crane,* 27 *Id.* 285.

In the latter case this court held that ejectment was an appropriate remedy for the owner of the fee against one who, having a right of way over the *locus in quo*, extended his fence and took exclusive possession thereof.

In *French* v. *Robb*, 38 *Vroom* 260, the abutting owner brought ejectment to remove an electric light pole in the public street, used for private lighting. This court held in that case that the owner of the soil in a street may maintain ejectment against any person wrongfully taking or claiming exclusive possession of the same.

This doctrine is supported by the great weight of authority elsewhere. It was fully sustained in the early English case of *Goodtitle* v. *Alker*, 1 *Burr*. 143.

One of the questions was "whether an ejectment will lie by the owner of the soil for land which is subject to passage over it as a King's highway," and the opinion recited that 1 *Rol. Abr.* 392 (*B*), *pl.* 1, 2, is express "that the King has nothing but the passage for himself and his people; but the freehold and all the profits belong to the owner of the soil."

Lord Mansfield, speaking for the court, said, among other things, "there is no reason why the owner should not have a right to all remedies for the freehold, subject still, indeed, to the servitude or easement." The legal writers and the judicial decisions are found to be generally in accord with the doctrine here stated.

In *New. Eject.* 31 (1892), the rule is stated thus: "It is a well-settled rule of law that the owner of land subject to an easement, servitude or public use, may recover the possession of land in an action of ejectment against a person wrongfully appropriating the same to a purpose wholly foreign to the easement or servitude. The rule applies to the public highways and the like, but in the action the land is recovered, subject to the easement or servitude." The rule is similarly stated in 10 *Am. & Eng. Encycl. L.* (2d ed.) 473, and the cases in support of the doctrine are fully collated there and in 17 *Cent. Dig.* 1978.

It is further contended by the plaintiffs in error that, granting the doctrine to be as stated, the occupancy of the

street in this case was not exclusive or inconsistent with the public use according to the meaning of the rule; that, in fact, the space between the rails was planked so as to admit the use of the highway by the public, except as to the small strip in the centre of the street, when the cars were actually running. But the answer to this is that such a use is an additional burden to the highway and, unless supported by legislative authority, it does wrongfully appropriate a portion of the highway to a purpose foreign to the easement. In *Burlington* v. *Pennsylvania Railroad Co.,* 11 *Dick. Ch. Rep.* 259; affirmed, 15 *Id.* 547, it was declared that a steam railroad, laid longitudinally in a street, is regarded as practically an exclusive appropriation of that part of the street which it occupies to a use inconsistent with the legitimate use of the street by the public.

And in *Louisville & St. L. & T. Ry. Co.* v. *Liebfried,* 92 *Ky.* 407, it was held that, in a suit by the abutting owner, ejectment would lie against a railroad company appropriating the same to its permanent use without legislative grant, express or implied.

It is not contended that there was any error in the refusal to admit in evidence the city ordinance empowering the defendants to construct and operate the branch railroad in question. Such an ordinance would not be admissible in the absence of any legislative grant to support the ordinance.

Under the evidence the plaintiffs were entitled to a direction of the verdict in their favor and hence there was no error in the rulings of the trial judge.

The same result is reached in the cases of George Rathacker against the same defendants, and in Philip Wilson against the same; the three cases, involving the same questions, having been argued together.

The judgment in each of these cases is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, FORT, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VROOM, GRAY. 10.

*For reversal*—None.