Q. M. FORD *v.* JOHN R. TUPPER AND H. H. CUSHMAN.

May Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed August 11, 1913.

*Easements—Extent of Right—Ejectment—Right of Exclusive Possession—Necessity.*

Where a deed of land on which was a mill also conveyed "for the benefit of the mill and mill privileges and the public" the use and occupancy of other described land, the servient premises "to be always kept open for travel, together with all and every privilege appertaining to said mill and mill privileges," the easement extended to every part of the servient premises, was more than a mere right of way for the public to travel, and included the right of possession to pile logs for the mill.

Ejectment cannot be maintained where plaintiff, though the owner in fee of the demanded premises, is not entitled to the exclusive possession thereof because subject to an easement that involves the right of possession of the whole by others for certain purposes.

EJECTMENT. Plea, the general issue. Trial by jury at the June Term, 1912, Windsor County, *Butler*, J., presiding. The exceptions state that, "At the close of all the evidence defendants moved the court to direct a verdict for the defendants. Neither party desired to go to the jury." Verdict directed for the defendants, *pro forma,* and judgment thereon. The plaintiff excepted. The opinion states the case.

*William Batchelder* for the plaintiff.

*William W. Stickney, John G. Sargent* and *Homer L. Skeels* for the defendants.

ROWELL, C. J. This is ejectment for land in the village of Rochester.

The demanded premises are a piece of land on which the west or third section of the defendant's store building stands.

They are a part of a considerable tract of land that Charles Brackett owned in 1827, and then sold to Loren Griswold by his warranty deed.

Said tract came down from Griswold in three parcels, namely, the store property, now owned by the defendants; the hotel property, now owned by the plaintiff; and the mill property, now or recently owned by some Harveys, it is said.

On August 6, 1830, by his warranty deed of that date, Griswold sold to Rust and Jefferson a piece on which then stood a building erected by them and used as a shoemaker's shop, but which now constitutes a part or the whole of the front end of the defendant's store building. This piece was bounded on all sides by what is here called the hotel property, except on the east side, which was bounded by the turnpike road.

On June 7, 1831, the said Griswold, by his warranty deeds of that date, sold and conveyed to Ephraim D. Briggs and to John Trask, respectively, undivided half interests in and to the westerly part of said tract, here called the mill property; and in each of said deeds he also conveyed "the use and occupancy for the benefit of the mills and mill privileges and the public, of the following described lands," bounding them on the west by the east line of the mill property, which is described as running S. 49½° W. from a stake and stones by the lower end of a water trough; on the east by the turnpike road; on the south by the north side and range of the grantor's horse barn; and on the north by Jason Wing's land; excepting the land on which Rust and Jefferson's shoe shop then stood. The deeds then go on to say that what we will call the servient premises "are to be always kept open for travel, together with all and every privilege appertaining to said mills and mill privileges that Charles Brackett sold to" the grantor by deed August 10, 1827.

On June 15, 1833, the said Griswold, by his warranty deed of that date, sold and conveyed to Joseph Tilden and Leonard Taylor "the tavern stand" that he formerly occupied, referring to Brackett's deed to him for "particular description," "reserving" what he had theretofore deeded to Patrick Cassidy, to Rust and Jefferson, and what he had deeded to Briggs and Trask, "containing mills, mill yard, mill privileges, etc."

The plaintiff claims that when Griswold deeded to Briggs and Trask as aforesaid, the only way used for access to the mills was between the store and the horse barn; that the effect of

Griswold's deeds to them was, to dedicate to the public a right to travel over that particular piece of land for access to the mills; that the way to the mills having been thus located and never changed, Griswold's deed to Tilden and Taylor conveyed the fee of the demanded premises; and that that fee has come down to and vested in him, as shown by the conveyances in the case.

But assuming that the way was thus located, which may be true; and assuming that it never has been changed in the sense of being abandoned, which is the only sense in which it can be true, according to the testimony, yet it by no means follows that the demanded premises were freed from all easements, as claimed. This is apparent when we consider the character and extent of the public easement, which is more than a mere right of way, but includes ''use and occupancy'' as well, and the right to have the premises in which it exists ''always kept open for travel, together with all and every privilege appertaining to the mills and mill privileges.''

It must be said, therefore, that the public easement once existed in every part of the servient estate, including the demanded premises, which estate extends quite a distance west of the demanded premises, and constitutes a considerable part of the mill yard, which the public has been accustomed to use for piling logs drawn to the sawmill, and to pass upon and over in going to and from the mills.

The testimony on both sides tends to show that at some time, and the plaintiff says it was before he bought the hotel property in 1888, a road was opened on the north side of the store, which, the testimony on the part of the defendants more especially tends to show, was also used by the public. Nor does the case disclose that the public has lost its easement, nor any part of it, by nonuse, abandonment, nor otherwise, but rather that it still exists to its full extent, notwithstanding any hindrances to enjoyment that may have been interposed by erections or otherwise.

This being so, the plaintiff cannot recover in ejectment, though he owns the fee of the demanded premises subject to the easement, for he is not entitled to the exclusive possession thereof. Such was the holding in *Tupper* v. *Ford,* 73 Vt. 85, which was ejectment for this very piece of land, brought by these defendants against this plaintiff.

The law of this subject, and the ground and reason of it, and what the action should be in such cases, are fully stated in *City of Cincinnati* v. *White's Lessee,* 6 Pet. 431.

*Affirmed.*