EBEN SIMMONS *v.* HENRY G. MUMFORD, SURVEYOR OF HIGHWAYS.

A Committee appointed by the Town Council of Providence, in 1817, to lay out, among other streets, "a street in continuation of Field street, and of the same width to the water," reported their proceedings, with a plat of the ways laid out, in which they stated : "We laid out and continued Field street in the same course and width two hundred and eighty feet from South street to Point street, and from Point street to the river." After the coming in of the report the town Council, in 1818, voted that it should be accepted, and that certain streets therein mentioned should be estab- lished; and further voted, as to the continuation of Field street and Eddy street, and certain other streets laid out, that "the same not being estab- lished by the Council, all consideration respecting them is postponed, and they are not to be established until it be proved to the satisfaction of the Council that said streets are made passable." No further action was ta- ken on the report until 1848, when the Board of Aldermen, who succeed- ed the Town Council, referring to the report of the Committee as to the laying out of this street, and to the postponement of the consideration thereof until it was proved to the satisfaction of the Council that said street was made passable, voted, that "said street extending from Point street is hereby declared to be a public highway, to be hereafter repaired at the expense of the city ;" *held,* that in order to give effect to the report of the Committee, it must be received and approved by the Town Coun- cil, and the ways laid out ordered to be established ; and that, if after the lapse of thirty years, the proceedings of the Council could be revived by the vote of the Board of Aldermen, yet to have any effect, the report of the Committee must have been received and approved, and the street laid out have been established as a whole, or rejected as a whole, and that the vote declaring "said street extending from Point street" to be a pub- lic street, referring to but a portion of the way reported by the Committee as having been laid out and continued "from South street to Point street, and from Point street to the river," was void.

Where tenants in common of land made partition of their estate, leaving undivided a strip of land forty feet in width, extending from a public street to the private property of another, and spake of it in the deed of partition as a street, and sold lots bounding upon said undivided strip as upon a street; *held* that, said undivided strip terminating upon private land and extending neither to another way, a mill, a market, nor other public place, the acts of the owners of the land, though they might give the owners of adjoining lands a right of travel thereover, could not be considered a dedication thereof to the public as a highway.

In the absence of any deed or map declaring an intent to dedicate land as a public highway, such an intent can be inferred only from some unequivocal act or an unequivocal assent to the use by the public, accompanied by actual use, and where the land is held in common by the proprietors on opposite sides, the assent of one proprietor is no proof of dedication without a corresponding assent by the other.

Land flowed by a navigable river cannot be dedicated as a highway by an individual, nor laid out as such by the Town Council.

The owners of lots adjoining an open strip of land, can acquire no easement or right of way over said strip, so as to make it a public way by *estoppel in pais*, unless they have been induced by the owner thereof to believe that it was a public way, with the design and intent on his part that they should expend money and build upon the line thereof, and they have acted upon that belief, and would be seriously injured if he were permitted to exclude them from using it as a public way.

THE facts and the points taken by counsel will sufficiently appear in the opinion of the Court, delivered by

BRAYTON, J. This action was heard at the March term, 1851. The declaration alleges that the defendant, on the 11th day of May, 1849, with force and arms, broke and entered the plaintiff's close, situate in the city of Providence, bounded northerly by Point street, easterly by Pawtuxet avenue, southerly by land claimed by Cyrus B. Manchester, and westerly by land belonging to the city of Providence, containing one half an acre, and broke down, injured and destroyed the plaintiff's fences, belonging to and enclosing the same.

The defendant pleaded the general issue of not guilty;
and it was agreed between the parties, that under the
plea, the "parties may avail themselves of any and all
evidence and defences, to which they would be entitled
by any special plea whatever."

A jury trial was waived, and the cause submitted to
the Court upon both law and fact.

The facts as they were in evidence were—that John
Field and Daniel Field, in November, 1794, in order to
divide their lands, situate in the southerly part of said
Providence, and extending from South street to the Isaac
Field farm, made and executed their deed of partition,
describing the lots set off to each, respectively, as fol-
lows :

To Daniel Field a lot, beginning at the corner of Field
street and south of Field street, bounded on Field street,
running southerly into the salt water, until it strikes the
line of the heirs of Capt. Isaac Field's farm.

To John, a lot of land, beginning at the corner of Field
and South streets, and north of Field street, running 95
feet on South street, then running at right angles south-
erly to the salt water, and into the water, until it inter-
sects the line of the heirs of the late Capt. Isaac Field,
and holding its width of ninety-five feet from Field
street ; leaving undivided a strip of land forty feet in
width, extending from South street, southerly, to the
water and into the water, to the line of the heirs of Isaac
Field.    This strip of land is referred to in the deeds, and
called Field street.

In a subsequent deed of partition between the same
parties, on the 29th of January, 1810, the lot is set off to
John Field, and is described as a lot of land on Point
street, beginning ninety feet from Field street, and on
the easterly side of Field street, and bounded northerly

on Point street, and westerly on land of John Field, (the lot before set off to him,) " and is a water lot extending easterly or southerly as far as our rights extend."

On the first day of March, 1817, the Town Council of the then town of Providence, voted, that certain streets should be laid out in that part of the [city, and, among these, that a street be laid out and extended in continuation of Field street, and of the same width to the water."

A committee was at the same time appointed to survey, bound and mark out the several highways ordered. The committee proceeded, under the warrant directed to them for that purpose, to lay out said streets, and made report of their doings, with a plat of the ways laid out, to the Town Council, on the 10th day of August, 1818, and notice was, thereupon, given, by order of the Town Council, to all persons interested, and the report and the hearing postponed to the 17th of August, and by adjournment to the 18th, when it was considered and acted upon.

The committee reported—" We laid out and continued Field street in the same course and width two hundred and eighty feet from South street to Point street, and from Point street to the river."

The Town Council, on the 18th of August, 1818; voted, that the said report be, and the same is hereby received, and that certain streets and lanes, mentioned in the report as laid out by the committee, be established as public highways.

" And it is further voted, the remaining parts of the streets marked on said plat by the names of Point street and Government street, also the *continuation of Field street and Eddy street*, the same not being established by

this Council, all consideration respecting them is postponed, and they are not to be established, until it be proved to the satisfaction of the Council that said streets are made passable."

No further action was taken on the report until the 17th of August, 1848, when the Board of Aldermen, who succeeded to the powers of the Town Council, voted that, "whereas it appears upon record in book No. 10, of the Town Council's proceedings, at page 71 and 2, that in the year of our Lord, 1818, sundry streets were laid out upon land of the heirs of Deacon John Field and Daniel Field, with their consent, among which streets was Richmond street, then called Field street, which is described as forty feet wide, extending from Point street to the river, and, whereas the Town Council postponed the consideration of Field street, aforesaid, until it be proved to the satisfaction of the Council that said street was made passable : Therefore said *street, extending from Point street,* is hereby declared to be a public highway, to be hereafter repaired at the expense of the city."

The way laid by the committee was identical with that referred to in the deed of partition.

Lots were sold off on either side of the way, beginning at South street, and extending to Point street, and that portion of it was built up many years since, and a thoroughfare opened from South street to Point street, which was also opened and travelled prior to 1837, though the precise time when these began to be used, does not appear.

Down to this period, 1837, all the land south of Point street lay common and unoccupied.

It appeared, also, in evidence, that all that portion of the alleged way, south of Point street, referred to in the

deeds of partition and in the report of the committee for laying out Field street, was, from the time of the execution of those deeds, subject to the ebb and flow of the tide ; that the sea flowed not only over the way in question, but considerably beyond and to the westward, and, at high water, covered the whole of the land described in the plaintiff's declaration, and constituted a navigable portion of Providence river ; that it was used for the purposes of navigation, there being a wharf for landing to the westward and beyond the way.   This continued down to the year 1824, when, by the building of the Pawtuxet Turnpike, under a grant of the Legislature, the navigation was cut off, by diking across from Point street to the Isaac Field line, though the tide continued to flow through sluices in the dike down to 1846.

In 1836, John Field, the owner on the *East* side, by his deed conveyed to the plaintiff's father, and from whom the plaintiff derives his title, the lot of land described in his declaration.   This deed bounds the grantee on the west by the land of Daniel Field and not upon any way.

Daniel Field, the owner on the *west* side, conveyed all his land on the west side by successive deeds to James Livesey, in November 1837 ; to C. B. and A. H. Manchester in 1839 ; to L. P. Mead and others, in March, 1844, and to L. Fuller in April, 1846.   In all the deeds of Daniel Field, the grantees are bounded upon the way, called Field street in the earlier deeds, and Richmond street in the later.

The grantees of Daniel Field, as they successively purchased, commenced filling in their respective lots for building, and filled also to the middle of the way, and

proceeded to erect buildings upon the line of their lots fronting on the way.

The plaintiff's lot had not been filled so as to be capable of any useful occupation until about the year 1845, when he, also, built upon his lot and upon the line of the way as claimed, but when he proceeded to fence in his land he carried his fence to the middle of the way, leaving a space of twenty feet only between it and the building on the other side.

It was also in proof that Simmons, the plaintiff's grantor, during his ownership on one occasion, some fourteen years since, spoke of this space as a street, that the plaintiff, sometime before he filled up his lot, also talked of it as a street, that on one or two occasions, he talked with the owners on the other side about filling to the middle of the street, that he had, also, on one occasion eight or nine years ago, claimed to own to the middle, and had denied to Manchester, four or five years ago, that it was a street.

One of the owners on the west side testified that he built upon the way on the faith that it was a street.

The land was filled up so as to be capable of travel five years ago, and the owners on the west side used it, as they had occasion, and others did so in some instances, but not to any extent.

Under this state of the facts, the defendant rests his defence upon the fact, that the *locus in quo* was within the limits of a public street or highway, extending from South street, southerly across Point street terminating at Pawtuxet avenue, and called Field street formerly, but now called Richmond street.

And the opening counsel claimed that the proceedings of the Town Council of the Town of Providence in

1818, and of the Board of Aldermen of the city in 1848, was a lay out under the statute, and that by virtue of these proceedings, a street was legally established at the place and over the premises in question.

It may not, perhaps, be necessary to consider all the numerous objections, raised by the plaintiff's counsel, to these proceedings as a lay out, and a consideration of two of the prominent objections may be sufficient for the determination of the case upon this point.

One of these is that the report of the committee as to Field street has not been received and approved by the Town Council or board of Aldermen and ordered to be recorded.

The second section of the act for laying out highways authorizes the Town Council, *to order a highway to* be laid out so far and through such parts of the town, as they may judge necessary.

And the statute prescribes that for the due marking out such highway "the Town Council shall appoint three suitable and indifferent men," whose duty it is to go to the place, where the way is ordered to begin, and from thence proceed to survey, bound and mark out a highway, conformably to the direction of the Town Council. It is their duty also, to agree with the owners of the land, through which the highway is laid, for the damages if they can.

"Having thus proceeded and finished laying out such highway, they shall cause an exact draft or plan thereof to be made, which, together with a proper return of their whole doings and writings under their hands and seals, shall be by them presented to the Town Council."

Upon this report the Town Council are to cause no-

tice to be given to all parties concerned to appear before them and be heard for or against receiving such report.

Upon this hearing, the statute requires that the Town Council shall proceed " to receive or reject such report, as to them shall appear just and right."

" And if the report be *approved and received,* then they shall cause the same to be recorded and such highway to be established and laid open."

Now assuming that the proceedings of the Town Council and of the committee appointed by them down to the time appointed for the hearing on the report, were in accordance with the statute we are to consider whether the action of the Town Council upon it was such as to constitute what is there called Field street, a public and common highway.

They did vote to *receive* the report, generally as to all the streets, and, also, that certain streets, mentioned in the report as laid out, be established as public highways; but at the same time voted as to the continuation of Field street, " the same not being established by this counsel, that all consideration respecting it is postponed."

Now the statute evidently contemplates a substantial approval and adoption of the report, a ratification of the doings of the committee in surveying, bounding and marking out, an approval of the way as actually laid out and bounded by them.   Upon such approval they are to cause the way to be established and laid open.   It may not be necessary that it should be approved in terms, but from their proceedings it should appear affirmatively, that the way, laid and reported, was by them intended to be a public way and that presently.

The Town Council are not, by their order to lay out and the appointment of the committee, thereby,

precluded from rejecting the report, though all the proceedings are regular and the committee have laid the way precisely in conformity to the order given them.

They might reject it, if there was any irregularity or defect on the proceedings of the committee, as they would be bound to do.

But, besides this, such reports may be and often are rejected because the Town Council finds that they have acted hastily and made their order without due consideration, that the way, after all, is of simple convenience rather than of necessity, or that the existing necessity will not warrant the payment of the expenses and damages, consequent on laying out, establishing and making it passable.

Whether any of these considerations influenced the Town Council in this instance, is not perhaps material. It is, we think, very clear, from the vote of the Council on the report as to the way, that they did not then consider it necessary to establish the way or to approve or adopt it. They postponed all consideration, and that not to a term certain, but indefinitely, and declared that it was not to be established, until it should be proved to them to be passable. So far, therefore, from approving, they substantially rejected the report, as to this way. Had they continued it from time to time for further consideration, they might have kept it alive, provided they had on the final consideration received and approved it, and ordered the street established.

The action of the Board of Aldermen in 1848, does not aid this omission.

There had been a lapse of thirty years since the action of the Town Council upon the report. If after so long a period, long enough to bar all claims to or in the land,

this would be construed into a continuance or revival of
the original proceedings of the Council to lay out Field
street, and to give to the Board of Aldermen authority to
receive and approve the report, and to establish this street
as laid out, it will become necessary to inquire, whether
they have done so.

It will be noticed that the way, originally ordered,
was " a continuation of Field street to the water." The
committee report they " laid out and continued Field
street from South street to Point street, and from Point
street to the river."

Now the vote of the Board of Aldermen is not that the
report of the committee laying out Field street be re-
ceived, or that it be approved. or that the said street be
established, but that " said street, extending from *Point*
street (not from *South* street) is hereby declared to be a
public street."

They simply declare a portion of what was laid out as
Field street commencing at Point street, and, it is to be
presumed, extending south (for they do not say which
way it was to be extended), to be a public highway,
thereby leaving the greater portion of the way as marked
out and bounded, still unapproved. They adopt the re-
port as to a portion only, and reject it in effect for the
residue. Now this cannot be done. The way must be
established as a whole or not at all. If the Town Coun-
cil, upon the return of the report, do not deem it "*just
and right*" to accept and establish the whole way or-
dered, they may reject the report and make a new order as
to the portion, which they deem necessary, but they can-
not establish a portion at one time, and another portion
at another. It is one entire way to be established or re-
jected, as to them shall seem just and right.

The counsel for the defendant claimed, secondly, that the land in question became a highway by dedication, as at common law; that the deed of partition between Daniel Field and John Field was an unequivocal act on their part, devoting the land to the public use as a street, and that it has been accepted by the public.

The closing counsel for the defendant relied upon this point and stated, that the main foundation of the defence was these deeds of partition.

To this point the counsel for the plaintiff replies, that the land claimed to be dedicated as a public highway, and as described and referred to in the deed, terminates southerly at the private land of the heirs of Isaac Field, and, if laid open, would not constitute a thoroughfare.

It will be perceived, that the deeds of partition bound southerly on the private land of the heirs of Isaac Field.

The way claimed to be dedicated, though it opened northerly into South street, extended to no other way on the south, and extended neither to Mill nor to Market, nor to any public place.

Had it been opened, as it is now claimed by the defendant, it was in the contemplation of the parties it was to be, it would constitute a mere court, in which the public could have no necessity to travel and to whom it could be of no use whatever. The sale of lots, bounding upon it, could not make it more useful to them. The only benefit would be to those owning lands on either side. By the sale of lots bounding on this space, the grantees under their deed might acquire by implication, a right to travel to and from their respective lots, and, for that purpose, would have a right to the entire width of it, and a right to have it kept open to its entire width.

This, however, does not reach the point, now made by the defendant. It gives no right to the public.

Had it been kept open, lighted and watched at the public expense, it would not have become a highway, where the public would have a right to travel.

The case of *Woodyear* v. *Haddon*, (5 Taunton 124), was a case of this kind. There, what was claimed to be a public street had been built upon, lighted, watched and cleansed, at the public expense, for nineteen years. It terminated, however, at the private land of Haddon, the defendant, who claimed a right to enter it from his land and travel over it. But it was held that he had no such right; that no one was entitled to use it except those dwelling upon it or owning lots there, the public having no right there.

Much stress was laid upon the fact, that the deeds of partition call it a street, as thereby clearly expressing an intent and purpose, that it should be for the use of the public, generally, as a street and not as a court.

Now, we do not think we should confine our attention to a single word, but look to the general scope of the language of the deed in its connexion with the subject matter. There was a strip of land, bounded upon as " a street." It must be called by some name—some term must be applied to it as a boundary. It might be convenient to call it a street, but it is evident, that the public could have no use for it. There is no necessity of implying that it was intended for the use of those, who could have no occasion for it.

But there is another objection, raised by the plaintiff's counsel, viz : that the parties could not legally dedicate the land to the use of any persons for a way, even to private individuals, because at the time of the execution

of these deeds, it was covered by the navigable water of Providence river.

This objection was, also, made to the proceedings of the Town Council, as a lay out, under the statute, and if well founded, must be equally fatal to both the dedication and the lay out.

The waters, at this place, were not only navigable, but were actually used for that purpose for thirty years after this partition. A way could not be made for travel, without intercepting and destroying that navigation. The deeds of partition, if they were to operate as a dedication of the land for the purpose, would operate as a license to interrupt this navigation—to create a public nuisance, and for that reason, would be void. It would be and was incapable of being accepted by the public, and, were it accepted and the way constructed so as to be capable of travel, would be a subject of indictment and liable to be abated as a public nuisance.

The right of passage and of transportation by water is not less important to the public than by land, and the use of the water communication not less beneficial.

It is not in the power of the Town Council to lay out a highway over navigable waters. This power is vested no where short of the legislature.

This was so held in the *Inhabitants of Arundell* v. *McCulloch*, (10 Mass. 70.) This was trespass for breaking down a bridge, which had existed sixty years over the Kennebec river, and over which a way had been laid out. But it was held that it was void both as to the way and bridge, that the bridge was a nuisance, which the defendant might lawfully abate.

The same point was determined in the *Inhabitants of Charlestown* v. *County Commissioners of Middlesex*,

(3 Met. 202,) and in *Commonwealth* v. *Charlestown*, (1 Pick. 180.)

The proceedings of the Town Council, so far as they affected this portion of the way, at least, were clearly void for this reason; and the question is, whether a private individual can lawfully do that, which the Town Council, in whom is vested the authority to lay out highways, wherever they deem them to be necessary, cannot do.

We are not able to perceive any reason why he should, and are compelled to the conclusion that he cannot.

We are then brought to the further conclusion, that the deeds of partition, as an act of dedication of this land to the public for travel, are wholly inoperative, as such, and could, at the time of their execution, confer no right upon the public to construct or use a highway over it.

If this be a way by dedication, we must look for some other acts clearly evincing the gift for that purpose.

There is no other act, put in evidence, which shows any intent to dedicate the *entire* space from South street to the Isaac Field line, or as it is now claimed, to Pawtuxet avenue and to be used as one entire street.

Field street, commencing at South street and extending to Point street, had been, prior to 1837, opened, built upon and travelled, but it was entirely disconnected with any way beyond. So far it may have become a public street.

All the land, South of Point street to the Isaac Field line, lay common and unoccupied in 1837, and was then subject to the ebb and flow of the tide.

The navigation, before existing there, had been cut off in 1824 by the Pawtuxet Turnpike, though the tide continued to flow through sluices in the dike down to 1837, and later.

The plaintiff's land was conveyed by John Field to

the plaintiff's father in 1826, bounding him westerly upon land of Daniel Field and not upon any way ; so that in 1837 Daniel Field was the owner of the land on the west side, the plaintiff the owner of the land on the east side, and they were tenants in common of the space, now claimed as a street.  And we are to inquire, whether there has been any unequivocal act of these owners, on both sides, devoting the space to the use of the public, for neither could alone and of himself dedicate it.  However clear may be the intent of Daniel Field on the west side, it would operate to confer no right on the public to travel there without a like intent of the plaintiff on the east side, also.

Now, what unequivocal act is there of his evincing such intent on his part ?  He has made and executed no deed.  It does not appear that any map has ever been made.  In the absence of any deed or map there is nothing from which to infer such intent but an unequivocal assent to the use by the public, an actual use with the assent of the owner.

In the case cited and relied upon by the defendant, *City of Cincinnati* v. *White*, (6 Peters 431.)  The Court say, " all that is required is the assent of the owner of the land and the fact of its being used for the public purposes, intended by the appropriation, such a length of time, that the public accommodation and private rights might be materially affected by an interruption of the enjoyment."  Now, in this case, it does not appear that the public accommodation would be materially affected, or that the way has been, at any time, used to any considerable extent or that the public would suffer any inconvenience, by interrupting the travel there· Neither is there any evidence, showing clearly an assent, at any time, to the use by the public.   There is no

express assent and no use, for such a length of time, as that it should be presumed.

It is insisted that the plaintiff is estopped to deny this to be a public way. Having permitted the owners on the other side to build upon the line upon the faith that it was a public street, it would be a fraud upon them now to shut it up.

It was no doubt in the contemplation of Daniel Field, that this was to be kept open forever and, therefore, he bounds his grantees upon it, and, had he been sole owner, he might perhaps have passed by his deed to his grantees not only a title to the lots to the line of the intended way, but, also, by implication an easement over the entire space, and a right to have it kept open for their use. But, being tenant in common only, this would not extend to the plaintiff's title and affect that. Yet would the land, to the extent of the title of Daniel Field, be subject to this easement in their favor and, upon a partition of the land, Daniel Field by his deed might be estopped from denying to them this easement over his entire share.

But their rights, as against the plaintiff, stand upon an entirely different footing. He having executed no deed, is to be estopped by matter in pais ; and in effect, the claim of the counsel is, that an easement passes to these owners on the opposite side by estoppel in pais, by parol, against the statute of frauds ; and, if the public can acquire any right to such an easement, it is to be wrought out through these rights of individual owners and indirectly, they having acquired no such right directly.

Permission to the owners to build on the line of this space as a street, and even permission to them to travel over the entire space, if effect is to be given to the

Simmons *v.* Mumford.

Statute of Frauds, would operate in their favor merely as a license, revocable at the will of the owner. Such a license could not enure as a conveyance of the right. It could pass by deed only.

Still, there are authorities, which maintain the doctrine, that a right may be acquired by estoppel in pais, against the statute, in favor of individuals.

But, supposing that it is so, it is very clear that it must be a stringent case to warrant a departure from the statute and to form an exception to the statute, which requires such right to be conveyed by writing.

The doctrine of estoppels in pais, in those cases in which it is allowed to operate, is based upon legal fraud, and there must be an admission intended to influence the conduct of the other party, actually leading him into a line of conduct to his injury, unless the party estopped be cut off from the power of retraction.

In this case, before these adjoining owners could acquire any easement over this strip of land, it must appear that the plaintiff has, by word or deed, induced them to believe that here was a public way of the width, not of twenty feet which they now enjoy, but of the width of forty feet ; that he has done this with the design and intent to induce them to expend money and build upon the line of it, and that they are thereby seriously injured, if he is now permitted to fence in and exclude them.

This must clearly appear before we should be authorized to say that the plaintiff is debarred from the exercise of his full dominion over this land.

Now, we do not find, in the facts before us, any clear evidence of such design or intent on the part of the plaintiff. There is no proof that he desired them to build on the line of this way or that he knew that their building

there was at all depending upon the fact that here was a forty feet street. One witness testified that he built there on the faith that it was such a street and that the plain-tiff had on one occasion admitted that it was a street. But it does not appear, that he intimated to the plaintiff, that his building was at all dependant upon that fact. They all supposed it was a street, believed it probably, but was the belief induced by the acts or declarations of the plaintiff. There is a want of evidence of it. Their deeds bound them upon a way, and in the absence of evidence to the contrary, it would be quite as reasonable to infer that that belief was induced by those deeds, as by anything said or done by the plaintiff.

We think, it would be going quite too far, to say that upon the evidence, the plaintiff has been guilty of a fraud upon the adjoining owners, and that he is thereby precluded from denying the existence of an easement over land, to which he shows a clear title.

If, then, the owners, on the opposite side of this way, have, as against the plaintiff, acquired no right to travel over the land, now enclosed by the plaintiff, and the public right is to be wrought out only through theirs, and the plaintiff is to be estopped to deny the public right, only because he would be estopped to deny the private rights, there remains no ground, upon which the right of the public can rest to travel over the land of the plaintiff.

*Judgment for the plaintiff.*

*Carpenter and Salisbury*, for the plaintiff.

*Ames and Payne,* for the defendant.