## SMITH v. THE STATE

1. A public highway may be established—1, by a laying out according to the statute; 2, by the uninterrupted use and enjoyment by the public of the road as a highway for not less than twenty years, without any circumstances to negative the intention to dedicate; and 3, by the actual dedication by the owner to the public as a highway.
2. If a deed call for a corner of two roads or the side of a road as a beginning corner or monument, and there be a known *actual* corner or side existing at the time of the deed, the actual existing corner, and not an ambiguous corner to be ascertained by surveying out the road, is the corner called for.
3. The public right to a road, once obtained by dedication or laying out, cannot afterwards be lost by *non user* or neglect of the overseers to work or open the road, as laid out or dedicated.

The writ of error in this cause removed into this court the judgment of the Supreme Court, rendered at the term of July, 1851,* against the plaintiff in error, which judgment was in affirmance of a judgment in the Passaic Oyer and Terminer against Joseph Smith, upon an indictment for nuisance in obstructing part of a public street in the town of Paterson, by erecting a building, projecting in said street fifty feet in length, and five feet in breadth.

To the charge of the Court of Oyer and Terminer, the defendant, Smith, prayed a bill of exceptions, upon which the errors in the Supreme Court were assigned.

By the evidence, it appeared that the street or highway in which the obstruction was alleged to be made was laid out by surveyors of the highways on the 22d day of September, 1761; that the monuments called for in the return were destroyed,

* Ante, p. 130.

and could not now be found ; that the middle of the road was laid along the north line of a farm, afterwards called the Abraham Van Houten farm ; and that the road was known by the name of the old York road ; and that the house which caused the obstruction was situate on the south side of the old York road, where it was intersected by a street, known as Main street, opened near forty years after the old York road, and running north and south ; and that the west side of the building was on the line of Main street; that Abraham Van Houten, before 1800, lived on the Van Houten farm, and had his garden fence erected north of his house, along the south side of the old York road, along by the place where the defendant's building was erected and across what was afterwards Main street, and that this fence was in a line with the post and rail fence that extended along said farm eastwardly ; that, after the opening of Main street, Abraham laid out a row of building lots, east of and adjoining Main street and fronting on the old York road ; that these lots had been for forty years sold as lots one hundred feet deep and fronting on the old York road, and abutting in the rear on the north line of a lot known as the stable lot, which was an old and well known boundary line; that the corner lot, on which the defendant's building stood, had been conveyed, since 1807, by all the different owners as fronting on the old York road, and one hundred feet deep to the stable lot ; that, in 1812, a picket fence was standing on the front of the lot in a line with a house known as the Berry house, standing on the lot next adjoining on the east, and that the public used the street and footpath up to the picket fence and to the front of the Berry house, which line was one hundred feet north of the north line of the stable lot; that, in 1820, a building was on the corner lot upon the line of the picket fence, and that the building and the Berry house and other houses on said lots stood on the same line, and that up to that line it was used as a public street, except the obstruction occasioned by stoops, platforms, and cellar doors, until 1848, when these buildings were burnt down by fire. In 1849, the north part of the corner lot was sold to the defendant by a deed, in which the description

Smith v. The State.

bounded him on the old York road or Broadway, and described his first line as running about twenty feet eight inches from the corner of Main street and Broadway, the distance bringing the north line exactly where the building and picket fence had stood. The owners of the lot, since 1820 until 1849, had always considered the north side of their building as the south side of the street, and had south of it the distance called for by their deeds.

In 1835, a survey had been made of the old York road under the direction of the town committee; and the surveyor, taking certain old buildings standing on the north side of the road, which were supposed or reputed to be on the line of the street, for his guide, made the south side of the street five feet further north than the side of the corner building. The evidence, as to reputed boundaries, was uncertain and contradictory. The defendant, in July, 1849, erected his store, a three-story brick building, five feet farther north than the old line upon which the former buildings stood, and upon the line as run out in the survey of 1835.

The question therefore arose, whether, if the true boundary of the highway could not be ascertained, or if the boundary of the highway laid out in 1761 was the line run in 1835, the *user* by the public, in the manner testified, for near forty years would, dedicate the strip so used to public use.

The charge of the court is given at length, with the exceptions of the defendant thereto, in the original report of the case in the Supreme Court (*ante*, p. 130).

The jury, under this charge, found the defendant guilty, upon which verdict the court gave judgment that the nuisance be abated,* and that the defendant do pay a fine, &c.

. *The judgment is according to the old and well settled authorities. 2 *Str.* 686, *Rex* v. *Papineau;* 7 *Term R.* 463, *R.* v. *Yorkshire;* 8 *Term R.* 142, *R.* v. *Stead;* 13 *East* 163, *R.* v. *Incledon;* 1 *Hawk. P. C.* 695; *Bk.* 1, *ch.* 75; 1 *Russel on Cr.* 381; *Roscoe Cr. Ev.* 747 ; *Angell on Tide Waters* 222. The form of the entry, framed from *Rastell's Entries* 441, was as follows: Therefore it is considered " that the nuisance aforesaid be wholly removed and abated, and that the walls, erections, and buildings above mentioned be taken away and removed, and that the aforesaid common and public highway be opened to its right and lawful width, *as it was until the erection of said nuisance*, at the proper costs and expenses of said Joseph Smith ; and that said Joseph Smith do pay a fine of five dollars," &c.

*Vroom* and *W. Pennington,* for plaintiff in error.

The great error of the court below was the assumption, in the charge to the jury, that by the *user* of the public for thirty-five years, this land had been dedicated to the public as part of this road. We contend that the question of dedication is a question of intention, which ought to have been left to the jury. 6 *Peters* 438 ; 3 *Kent* 431 ; 19 *Conn.* 268, *Noyes* v. *Ward ;* 8 *Ad. & Ellis* 99, *Barricklo* v. *Johnson.*

What was the intention of the owners, is to be found by the jury, and inferred from circumstances ; and no length of time will dedicate a road, unless it be the intention of party to dedicate.

Here there was a highway laid out ; parties only intended that their land included in the road laid out should be used by and dedicated to the public, and if from uncertainty as to the line of the road, they permitted the public to use beyond it ; still, as their intention was only to dedicate to that line whereon it was, there can be no inference of law of an intention to dedicate beyond it. 3 *Mass.* 406 ; 1 *Zab.* 145, *Stuyvesant* v. *Woodruff.*

This made it important where the original survey of the road was, and the charge of the court on that point was against law.

*Zabriskie* and *Dayton,* for defendant in error.

This is a question as to what amounts to a dedication of land to the public for a highway. The error assigned is, that the court charged the jury that a *user* by the public of a strip of land as a highway for over twenty-five years, with the knowledge and assent of the owner, dedicates that land to the public, without reference to the question whether the owner *intended* to dedicate it to the public.

There are two modes of dedicating land to the public—one is by some act or action which shows an intention to dedicate it, and this requires no more time than is necessary to perform the act which constitutes the dedication, as by a deed declaring that it is so dedicated, by making a map with streets, and selling lots upon them ; by opening a street, grading it,

and inviting the public to use it. 6 *Wend.* 651, *Denning* v. *Rome;* 8 *Wend.* 105, *Livingston* v. *Mayor of New York;* 19 *Wend.* 138, *Matter of Thirty-second street; Spencer* 86, *Dummer* ads. *Den;* 1 *Hill* 189, *Matter of Twenty-ninth street;* 1 *Hill* 191, *Matter of Thirty-ninth street.*

· Another mode by which a street may be dedicated is *user* of it *as a public street* by the public for twenty years without any intention of the owner to dedicate it, or evidence of such intention other than such *user*. If the use is permissive, and so understood by the public, then it is not used as *a public street*, and of consequence the *user* would not dedicate. And the question here is, not what is the intention of the owner, but what is the *understanding of the public* under which they use it. If they use it as a right, it is under an *adverse* claim, and such adverse *user* will establish the right, and dedicate the way, by analogy to the statute of limitations.

This distinction will reconcile the authorities and cases, which sometimes seem contradictory from losing sight of it. An intention to dedicate, once manifested by clear evidence, dedicates in a day. A few years *user* as a street with assent of owner to *user*, without any other express act of dedication, will dedicate, and twenty years *user* by public as a highway, without any intent to dedicate, or any other assent to such *user*, will dedicate the part so used. 22 *Pick.* 75, *Valentine* v. *Boston;* 3 *Kent.* 452; 19 *Pick.* 147, *Stetson* v. *Faxon;* · 19 *Conn.* 265, *Noyes* v. *Ward;* 19 *Pick.* 406, *Hobbs* v. *Lowell;* 5 *Barn. & Ad.* 469, *Rex* v. *Leake.*

The court did not, in the language of the bill of exceptions, tell the jury that it was an established fact that the road was dedicated, but that " if you believe the witnesses," who show that this land was used by the public with the assent of the owners for more than twenty-five years, this evidence establishes the public right. And so, as to the third exception, the court say, " if this be so," that is, if this strip be dedicated by *user*, it is not material where the road was originally laid out.

ELMER, J. The errors assigned rest altogether upon the bill of exceptions taken to the charge of the judge upon the trial

before the Court of Oyer and Terminer. It is well settled, that only the points on which the exceptions were taken are open to examination in error. 7 *Halst.* 168; 1 *Green* 216. The first was, in substance, that the judge took from the jury the decision of the questions, as to the dedication and use of the land in controversy as a public highway, and assumed them as established facts. This exception is not made out in point of fact; and if it were true that the court had expressed a decided opinion upon the weight of the evidence, it would not be error.

The second exception relates to the construction of the deed from Parsons to Pennington and others, a question in itself not very material; but, whether it was so or not, the instruction was right.

But the exception mainly insisted on in the argument before this court, and the only one upon which I have felt any doubt, is the third, viz. " that it was not material where the road was originally laid out, or whether the lines of the street, as occupied, correspond with the lines of the original survey, or whether the road was ever laid out by surveyors of the highways." It was very strongly insisted that the question of dedication of land for public use, is always a question of intention; and that admitting it to be law, that a laid out highway may be widened or altered by long public usage, affording evidence of the intention of the owner of the property and of the people thus to dedicate it, yet that the true situation and course of the road, as originally established, are material elements in the decision of the question, whether or not it was so dedicated. Undoubtedly such facts may in many cases be very material, so material that the true solution of the question of dedication may turn upon them; but a careful examination of the charge, as applied to the evidence, and of the exception itself, has satisfied me that in this case the direction complained of, taken in connection with other parts of the charge, was correct.

A dedication implies, as has been argued, the intention of the owner of the land to make the dedication; and so the law was correctly stated in the charge of C. J. Hornblower, in the case of *Stuyvesant* v. *Woodruff*, 1 *Zab.* 145.

Nor is there any thing in the charge before us in contradiction of this doctrine. We have been referred to the following clause of it, as implying the contrary, or as at least excluding from the jury a proper consideration of the question of intention : " If there were no evidence in the cause previous to the year 1821, when Parsons acquired title, it is nevertheless shown that the public have used the land where the defendant's building is erected, with the assent of the owners, for more than twenty-five years. If you believe the witnesses, this evidence establishes the public right. If this be so, it is not material where the road was originally laid out, or whether the lines of the street, as occupied, correspond with the lines of the original survey, or whether the road was ever laid out by surveyors of the highways. The public have acquired by use a right to the road, as good as if the street had been originally laid out where it now is according to law." In another part of the charge, the judge had stated that the mere fact that the owner of the land chooses to leave it unfenced, does not divest him of his property or give a right of way to the public ; that he may permit the public to use it for the purpose of passing and repassing, and yet vest no right in the public. All this and other parts of the charge are founded upon the doctrine that dedication is a question of intention ; so that the charge taken together contains nothing in contradiction of, but much in support of that doctrine. It does not appear that a more explicit statement of that point was required by the nature of the evidence or by the arguments of the respective counsel. Every charge necessarily has reference to, and depends much upon the admissions and arguments of the counsel. For any thing that appears, the counsel of the state may have explicitly admitted that the intention to dedicate was necessary ; so that this principle was fully understood by the jury, and required no elucidation from the court. Hence the party who objects to any part of a charge as erroneous, is bound to point out the error and make his exception at the time, or to ask of the court an explicit charge upon the point of law he thinks important, otherwise a court of error will not and cannot with safety interfere. Had the court been asked to charge

that the question of dedication was one of intention, we are bound to infer, and indeed may in this case safely infer from what was said, that it would have done so. Had such a charge been refused, so that injustice was done, it would have been good ground for a reversal; but the mere omission to state correct principles cannot be so held, unless it be clearly shown that such omission led to an erroneous result.

The most that can be properly inferred from the language of the judge, which is complained of, is, that in his opinion the evidence, as to the acts of the owners of the property since 1821, if believed by the jury, established an intentional dedication of the land by those owners to the public use; so that it thereby became a public highway, even if it were admitted that the road, as originally run, did not go there, or that no road was ever legally laid out. Such opinion he had a perfect right to give, and it was fully warranted by the evidence. The street in question had been laid out as a public highway so long ago as the year 1761, before the town of Paterson existed. It was admitted by the surveyor, whose running was relied on by the defendant, that the two first courses were, as he terms it, indefinite, that is to say, they could not be ascertained; so that his survey depended wholly upon certain buildings, which he assumed, from information he relied on, to have been erected on the true lines of the street. It appeared that, as far back as the year 1793, a post and rail fence existed at the place in question, along what is now called Broadway, from the corner of what is now Main street, which was followed by a paling or picket fence, and afterwards a store house was put up on the same line, which was regarded by all parties, and occupied by the successive owners of the property and the public as the true line. In 1821 Parsons, one of the witnesses, became the owner of the corner lot, and from that time the lines and usages remained unchanged, until the defendant built his store house between four and five feet over the line, as previously recognized. Parsons sold the property, in 1835, to Pennington and others, who, in 1849, sold to the defendant. These sales were made by the foot, as laid out on Main street, at a high rate. Parsons and Pennington both testify, that although

doubts were expressed about the true line of Broadway, they held and sold only to the corner, as they found it established, and as the line had been used for more than fifty years; and it is admitted that the defendant has all the front he purchased and paid for, without the additional land, for building on which he is now indicted. Not only had all the successive owners of the corner lot occupied and transferred it as bounding on the line where the old fence had stood, but other adjoining lots were held and sold in the same way, and dwelling houses and stores were built on them to correspond with the building at the corner, as it had been used to stand. Under such circum-stances, an intentional dedication of the land now built on, if it be indeed outside of the true line of the street, as originally run, ought to be conclusively inferred. After the line of a street in a town or village has been long regarded and been built upon as running at a particular place, it would be sanctioning gross injustice to allow one proprietor to advance his building so much as to throw the others back, and thus perhaps greatly depreciate their value. As was said by the Supreme Court of the United States, in the case of *Cincinnati* v. *White*, 6 *Pe-ters* 438, "After being thus set apart for public use, and en-joyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an *estoppel in pais*, which precludes the original owner from revoking such dedication." And, substantially, the same principle was established by the Supreme Court of this state in the case of *Den* v. *Dummer*, *Spencer* 86.

The fourth exception is not well taken. The neglect of the overseers to work a road, or the acts of other township or city officers in surveying or otherwise endeavoring to ascertain its true location, conclude neither the owners of the land nor the public. Such acts may sometimes be competent evidence, and may be laid before the jury, as they were in this case. But they cannot relieve the defendant from his liability, if it turn out that he has in fact encroached upon a highway, either as it was laid out, or as it has become such by the dedication of the owner of the land to the public use.

The judgment of the Supreme Court affirming the judgment

of the Court of Oyer and Terminer, ought, in my opinion, to be affirmed.

POTTS, J. Smith was indicted at the Passaic Oyer and Termininer for a nuisance. The alleged nuisance was the erecting a building some four or five feet over the line of Broadway, in Paterson. He was found guilty. The Supreme Court affirmed the judgment, and this writ of error is brought to review the case. The facts will be found sufficiently stated for reference in 3 *Zab.* 130.

The errors assigned embrace four exceptions to the charge delivered by the court to the jury at the trial in the oyer. The first and third cover the most material grounds relied on for a reversal, and may be considered together.

The *first* is, that "the jury were expressly told, and a large part of the charge assumed it as an established fact, that the land in question had been *dedicated* by the owners to public use, and used by the public as a highway for a sufficient length of time to establish the same as such in law; whereas the question of such dedication and use are properly questions for the jury, and should have been left open for their decision." The *third* is, "because, by said charge, the jury were instructed that it was not material where the road was originally laid out, or whether the lines of the street, as occupied, corresponded with the lines of the original survey, or whether the road was ever laid out by surveyors of the highways; whereas each and all the said matters were material and important."

There can be no doubt that the four or five feet of land over which the plaintiff in error had extended his building on Broadway, in the town of Paterson, had been used by the public as a part of the street, with the permission, or at least without the interdiction of the owners of the land, for a period of more than twenty-five years. The testimony of Andrew Parsons and Aaron S. Pennington, who had the title, establishes this fact beyond all controversy. The real question is, what is the effect of such permissive use? Does the *mere use*, with the assent, or without any dissent of the owner, of itself vest a

right in the public, or amount to a constructive dedication of the land? or is it necessary that it should appear affirmatively, by facts or circumstances, that such assent or permission was given with the *intent* on the part of the land owner to part with his private right to the soil, and give it to the public? And if so, was the question of intention left by the court to the jury as a question of fact, with proper instructions?

Now I think the *intention* of the land owner to dedicate, or surrender, or abandon land to the public for public use, is of the essence of the act on his part, and is the foundation of the public right to it. He is not bound to fence his land from the highway, or build his house or construct his fence upon the line of a street. He may leave his land out in common if he pleases, and reclaim it at his pleasure, so long as there is nothing in the lapse of time or the facts and circumstances of the case to let in the legal presumption that he has done it with the intention of dedicating it to the public or abandoning it to the public use.

But if, on the other hand, property owners on the street of a city thus throw out land in front of their dwellings or of their enclosed lots, and leave it in that situation, acquiescing in the public use of it as part of the street, until it comes to be so regarded and adopted as such by the public generally, and persons, assuming it to be a part of the street, locate their buildings in accordance with that belief; and more especially when such property is bought, sold, and divided among different purchasers, who take, hold, and improve portions of it under the same idea, the case presents a very different aspect, and the law will imply the intention, from the facts and circumstances of the case, to support the public right, particularly if that right has been enjoyed uninterruptedly for a period of twenty years, without any thing appearing to rebut the presumption of an original intention to dedicate or abandon to the public.

Such is, in substance, the well settled doctrines of the law. Justice Thompson, in the case of the *City of Cincinnati* v. *Lessees of White*, 6 *Peters* 440, says, "There is no particular form or ceremony necessary in the dedication of land to pub-

lic use; all that is required is the assent of the owner of the land and the fact of its being used for the public purposes intended by the appropriation." And the same doctrine was held by C. J. Best, in 3 *Bingham* 447, who told the jury that " if they thought the street had been used for years as a public thoroughfare with the assent of the owner of the soil, they might presume a dedication." That is, it became a public street by the permission of the owner to have it used as such. And Justice Thompson, in the first case cited, adds, that such use ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment.

Chancellor Kent, in 3 *Commentaries* 451, sums up the doctrine in this proposition, that if there be no other evidence of a grant or dedication than the presumption arising from the fact of acquiescence on the part of the owner in the public use of land as a road, twenty years' use would be required to establish the right, in analogy to the statute of limitations ; but that unequivocal acts of the owner might raise the necessary presumption within any intermediate period. In the one case the law presumes an intention to dedicate the land, in the other the parties declare it.

In the case of *Noyes* v. *Ward,* 19 *Conn. Rep.* 268, it was held that it is the circumstances of the case, rather than the time, that fixes the public right; that it should be for such a length of time that, under the circumstances, it should satisfy the mind of the triers that it was with the assent of the owners of the land ; and that the rights of the public and others would be injuriously affected by permitting the owner to resume his original right to exclude the public therefrom. Each case, in this respect, depends on its own circumstances, and it is only with reference to the particular cases before them that courts have spoken of the time during which the use of the public has been permitted. The intention to dedicate is the origin of the public right to use; and the intention may be presumed from the circumstances, or established by the facts of a case.

In accordance with this, is the case of *Barraclough et al.* v.

*Johnson et al.*, 8 *Ad. & Ell.* 99.   The principle there laid down
is, that in determining whether or not a way has been dedi-
cated to the public, the intention of the proprietor must be
considered.   If it appear that he has suffered a continual *user*,
*that* may prove a dedication, but such proof may be rebutted
by evidence of acts showing that he contemplated only a license
resumable in a particular event.   The court in that case held
that there was no dedication, though the public had had the
use for a period of nineteen years, because it was shown that
the owner had no intention to dedicate it ; and 5 *Barn. & Ald.*
454 was cited to show that a use enjoyed as long as could be
remembered did not establish a right, because it originated in
the permission of a *tenant*, and not of the landlord.   The in-
tention of the owner of the fee was wanting.   But it that case
if the land had been in possession of the owner of the fee, and
such use had been permitted by him, the presumption of an
intention to grant it would have been sufficiently established by
the lapse of time alone.

The case of *Valentine* v. *City of Boston*, 22 *Pick.* 75, was
where a man set his house back from the line of the street, and
the public used the strip in front of it as a part of the street for
more than forty years ; and the court held that this use for so
long a time was evidence of a dedication by the owner.   And
the general doctrine on the subject is very well stated in *Stuy-
vesant* v. *Woodruff*, 1 *Zab.* 145, "that whether lands have
been dedicated to the public use or not, is always a question of
intention ; and the proof of that intention may be express or
may be gathered from circumstances."   It may grow up from
the lapse of time and long use of it by the public.   And so is
the language of the chancellor in *Livingston* v. *The Mayor
of New York*, in error, 8 *Wend.* 105.   He says, " there are two
modes of establishing the dedication of a street, one by length
of time, the other by an act so unequivocal in its nature as to
require no time to warrant a presumption," that is, a presump-
tion of dedication by the owner to the use.

The cases in 19 *Wend.* 128, and 1 *Hill* 189, lay down the
undoubted doctrine, that where a man sells lots bounded on a
street by description in his deed, that is, of itself, an act of

dedication. The intention is apparent in the act itself. And the case in 1 *Spencer* 106 is analogous in principle.

I repeat, therefore, that the doctrine of all the authorities is, that the *intention* to dedicate land to the public use is of the very essence of the act; but this intention may be proved as a fact, or inferred from circumstances. The result is, undoubtedly, that the intention is a question for the jury; but the court has a right, equally undoubted, to tell the jury what facts or circumstances will in law amount to a dedication, leaving them to judge whether such facts and circumstances appear in the case before them.

It then remains to inquire, on this branch of the case, whether the question of intention, upon the facts and circumstances which appeared in evidence, was fairly submitted to the jury under proper instructions by the court.

The whole charge must be taken together. After some preliminary remarks, the court charged, that a public highway may be established—1, " by the act of surveyors of highways in laying out the road according to the statute; 2, by the uninterrupted use and enjoyment of the road, as a highway, by the public for a period not less than twenty years; 3, by the dedication of the land by the owner to the use of the public as a highway." These, as general propositions, are unquestionably true; though the second of them is subject to exceptions, as, for instance, if the use had originated and been continued by permission of a tenant merely, and not of the owner of the fee; or if there were circumstances sufficient to negative the presumption of an intention on the part of the owner of the fee to dedicate the land to such use, the mere lapse of time would not establish the right. But the charge does not stop here: it goes on to state what circumstances will *not* constitute a dedication. It says, " it is certainly true that a landlord may leave his land adjoining a highway unenclosed and open to the public; he may permit the public to use it for the purpose of passing and repassing, and yet vest no right in the public." And " it is said again, that the mere fact that a man opens the street up to his house, if he leaves his porch or cellar door extending into the street, it protects his right: this is

undoubtedly true, if there be in fact no dedication of the land to the use of the public." "The use by the public of private property, or the appropriation of a public street to individual use for the necessary purposes of steps or porches, may be permissive merely, without conferring any right." And "this (says the charge) brings up the question, whether in fact this land was used by the public with the assent of the owners, and with a recognition, on their part, of the right of the public to the use of the road in the place where the defendant's building is erected." This, it seems to me, was leading the jury fairly to the inquiry as to the intention to dedicate, and was stating the law with sufficient accuracy; for, as a question of law, it is clear, on all the authorities, that if the owner of land assents for twenty years to the public use of his land, and during all that time recognizes their right to use it as a public road or street, the intention to dedicate it to that purpose is as clearly implied as if he had expressed it in any other way.

And it is with this preliminary statement of the question before them, that the court proceeded to sum up the evidence on that part of the case to the jury; and having stated, as matter of opinion, that "if there were no evidence in the cause previous to the year 1821, when Parsons acquired title, it is nevertheless shown that the public have used the land where the defendant's building is erected with the assent of the owners for more than twenty-five years," it is added, that "*if you believe the witnesses,* this evidence establishes the public right." That is, taking the several parts of the charge together, if you believe the witnesses, they prove the use of this land by the public for more than twenty-five years, with the assent of the owners that they should so use it as a street, thus recognizing the public right for that length of time: and "if this be so," if the public right has been thus established, "it is not material where the road was originally laid out, or whether the lines of the street, as occupied, correspond with the lines of the original survey, or whether the road was ever laid out by surveyors of the highways."

Whether, therefore, the facts were correctly stated or not, and whether or not the conclusion, as to what was proved,

was correct, it was still put to the jury as a question for them to decide. The legal inference drawn from the facts, if the jury should find them as stated, was correct. There was no error in point of law, and it is only such an error that this court can deal with. 2 *Halst.* 190.

The *second* exception is, that the court instructed the jury that the description in Parson's deed to Pennington and others manifestly calls for the corner of the street, *as it actually was at that time.* The language of the deed is, " beginning on the easterly side of the Paterson and Hamburgh turnpike, at the southeast corner of its intersection with Broadway." Undoubtedly where a corner or a monument is described as a fixed, known, existing landmark in a deed of lands, the fair inference is that the grantor means the monument or corner existing and known as such *at the time* of the grant; for ambiguity is not to be presumed where it does not appear in the language itself. And if we go outside of the plain words of the deed in search of a different intent from that which the words express, we do not find it in this case; for Parsons says, though he claimed to bind on Broadway, wherever it was, yet he never did occupy or claim farther than the line of the picket fence or the corner, as it was when the deed was made. There is no ground, therefore, for this exception.

The *fourth* exception is, that " the court instructed the jury that the act of township officers in not working the road, and of the overseers of the highways and the counsel of the township in not correcting the error, (if any actually existed) cannot relieve the defendant from liability ; whereas the said matters were material and binding on the public, and ought to have been left to the jury for their consideration." There was no error in the instruction here referred to. Public rights, once acquired, cannot be lost by any mistake or neglect on the part of township officers, nor can a public road or street, once legally established in any of the modes recognised by law, be afterwards altered, except in the mode provided by the law.

Upon all the points, I concur in affirming the judgment below.

*For affirmance*—The CHANCELLOR, Justices ELMER and POTTS, and Judges SCHENCK, CORNELISON, ARROWSMITH, VALENTINE, WILLS.

*For reversal*—Judge RISLEY.

Judgment affirmed.*

* In this case the record was remitted to the Supreme Court for execution, and an execution was issued to the sheriff of the county of Passaic, commanding him to remove the building and walls found to be a nuisance by the verdict, and was returned by him duly executed.

CITED *in Hopkinson* v. *McKnight*, 2 *Vr.* 426 ; *Atty. Genl.* v. *Mor. & E. R. R. Co.*, 4 *C. E. Gr.* 391.