# Cake *v.* Sunbury Borough, Appellant.

*Deeds—Descriptions—Boundaries—Reference to plan of lots—River as boundary.*

Where a plan of lots indicates the west boundary of the lots as a river, and a re-plot of the plan indicates the west boundary as a road, the western line of which was the east line of the river, and subsequent deeds by the owner called for a street as the west boundary, and it appears that the high water line of the river overlapped the street until a navigation dam was washed away many years after the making of the plan of lots, and after all the lots had been sold, the owner and his heirs can make no claim to the space left open by the permanent recession of the river due to the abandonment of the dam, but the same will be presumed to have been dedicated to the use of the lot owners and the public.

Argued Oct. 24, 1911. Appeal, No. 289, Oct. T., 1910, by defendant, from judgment of C. P. Northumberland Co., Sept. T., 1907, No. 348, on verdict for plaintiff in case of J. A. Cake and Jennie Cake v. Sunbury Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass for removing sand from land along a river front. Before SAVIDGE, P. J.

The facts are stated in the opinion of the Superior Court and in 43 Pa. Superior Ct. 95.

At the trial the defendant presented the following points:

1. Under all the evidence the verdict must be for the defendant. *Answer:* Refused. [1]

2. Under the authority of Balliet v. Com., 17 Pa. 509, and Com. v. Y. M. C. A., 169 Pa. 24, the width of Front street or the "River Road," between Reagan street and the northern line of the borough is not limited to either the traveled way or the fifty feet as laid out by the quarter sessions in 1796, but extends to ordinary low water mark of the river. *Answer:* Refused. [2]

4½. The plaintiffs having restricted their claim to materials taken between Packer and Alice streets, the undisputed evidence being that between these points, prior to the widening of Front street by the borough of Sunbury in 1902, ordinary high water mark of the river fell within the eastern one-half of Front street, even though the calls in the deeds to lot owners for lots abutting the eastern side of Front street between these points limited them to the middle line of the fifty feet wide street or road as laid out, since the undisputed evidence is that the call when so limited carried them west of ordinary high water mark, under the law they went from thence to ordinary low water mark to the river; upon any recession of the ordinary low water mark after the destruction of the dam in 1904, they followed the recession and now have title to ordinary low water mark between Packer and Alice streets, and the plaintiffs cannot recover. *Answer:* Refused. [3]

5. Even though J. W. Cake, his descendants and assigns, might have had title to the western one-half of Front street, yet if the jury believe that the same was washed away by the action of the water so that the eastern one-half of the road was reached by the ordinary high water mark of the river, the lot owners on the eastern side of the

road became and now are riparian, and the plaintiffs cannot recover.  *Answer:* Refused. [4]

6. Even though title of the lot owner abutting the eastern side of Front street should be limited to the middle of Front street, such middle line is not the center of the fifty foot highway laid out by the quarter sessions but the center line between the eastern side of the highway and ordinary low water mark of the river, for the reason that the ordinary high water line of the river and the public highway have always been coterminous.   This center line would take the lot owners on the eastern side of Front street beyond ordinary high water mark and under the law would carry them thence to ordinary low water mark, and the plaintiffs cannot recover.  *Answer:* Refused. [5]

Verdict and judgment for plaintiff for $59.00.  Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*J. P. Carpenter,* with him *J. Fred Schaffer,* for appellant, cited: Johnson v. Grenell, 188 N. Y. 407 (81 N. E. Repr. 161); Delachaise v. Maginnis, 44 La. Ann. 1043 (11 So. Repr. 715); Watson v. Peters, 26 Mich. 508; Welles v. Bailey, 55 Conn. 292 (10 Atl. Repr. 565); Com. v. Y. M. C. A., 169 Pa. 24.

*J. A. Cake,* for appellees, cited: Paul v. Carver, 26 Pa. 223; Cox v. Freedley, 33 Pa. 124; Wood v. Appal, 63 Pa. 210; Brisbine v. R. R. Co., 23 Minn. 114; Woodruff v. Neal, 28 Conn. 165; Harrison v. Brown, 5 Wis. 27; Jewett v. Gage, 55 Me. 538; Chambers v. Furry, 1 Yeates, 167; Chess v. Manown, 3 Watts, 219; Lewis v. Jones, 1 Pa. 336.

OPINION BY HENDERSON, J., April 23, 1912:

This case was before us on a former appeal, 43 Pa. Superior Ct. 95, and was reversed for the reason that the

trial judge gave binding instructions for the plaintiff on questions which we regarded as subjects for consideration by the jury. As the case was then presented the plaintiffs' title along the whole river front of the tract of land which Joseph W. Cake, the father of J. A. Cake, one of the plaintiffs, formerly owned, was involved. At the last trial the trespass asserted by the plaintiffs was committed on land between Packer and Alice streets in the borough of Sunbury on the space between high and low water marks in the Susquehanna river, and directly in front of blocks 70 and 80 as described in a plan of his addition to the borough made by J. W. Cake about 1866. J. A. Cake, one of the plaintiffs, claimed title by inheritance from J. W. Cake, and Jennie Cake, the other plaintiff, by purchase at sheriff's sale of the interest of Joseph W. Cake, Jr., another son of J. W. Cake, to one-fourth, each, of the ribbon of land between high and low water marks along the river front of the J. W. Cake addition of the borough referred to. J. W. Cake died June 1, 1879. There were two of his daughters living who were not parties to this action. The plaintiffs' claim was therefore to an undivided half of the land involved. Two defenses were presented at the former trial affecting the plaintiffs' title. The first was that the grant of the river front lots conveyed the title to low water mark in the river, and the second, that if the title did not pass to that limit there was a dedication of this space between high and low water marks to the public.

The same propositions were presented in the second trial and additional evidence was taken to show that all of the river front lots were sold by J. W. Cake or his successors in title and that the conveyances were to the river. It was shown by the plot of J. W. Cake that the front lots were bounded by the river on the west. At the time that plot was made a dam existed in the river which was built by the commonwealth under the internal improvement Act of April 9, 1827, P. L. 192. This dam was built at an earlier date than 1844, and remained until

1904, when a part of it was carried away by a flood. The dam raised the low water level of the river about eight feet and this was the condition of the river during all of the time that J. W. Cake was an owner of land and during all of the time that either of the plaintiffs was interested in any of the lots included in the J. W. Cake addition. It was after the dam was broken and the low water line of the river receded that this piece of overflowed land became a matter of interest to the plaintiffs. One of the proofs introduced by the defendant was a plot of lots in blocks 70 and 80 of the plan of J. W. Cake before referred to. J. A. Cake, one of the plaintiffs, acquired title to the land in these blocks, except one in number 80, by deed from the sheriff of the county dated December 10, 1883, the land having been sold as the property of J. W. Cake. Subsequently J. A. Cake caused these blocks to be replotted. Three of them were conveyed by J. A. Cake and wife to W. F. Rhoads on August 15, 1899. The lots were thus referred to in the deed: "known and designated on the plan of Cake's addition to Sunbury, as lots fourteen (14), fifteen (15) and sixteen (16) in block seventy (70), on the plan of said Addition as changed by J. A. Cake and bounded and described as follows: On the north by lot number thirteen in said block, on the east by Fort Augusta avenue, on the south by Amy street, and on the west by Broadway and Front street." The remaining lots in the two blocks were sold as the property of J. A. Cake by the sheriff in accordance with the plans of lots referred to in the above-recited deed. This plot was admitted by J. A. Cake to have been prepared by his direction and it is not disputed that the conveyances were made in accordance therewith. This J. A. Cake plot was not put in evidence at the former trial as we understand the record. An offer was made of the proceedings in No. 52, February Term, 1897, in the court of common pleas of Northumberland county in the case of the Sunbury Trust and Safe Deposit Company v. J. A. Cake, and the draft thereto attached, purporting to be a draft planned and drawn

by H. S. Boyer, May 11 and 17, 1895, for J. A. Cake, being an addition to the borough of Sunbury and being the same block numbers 70 and 80 contained in the original plot of J. W. Cake's addition to the borough of Sunbury. When the offer was concluded the proceeding was interrupted by the sickness of a juror; whereupon, the case went on by consent with eleven jurors. The attention of the court and counsel was then diverted to another feature of the case and the record referred to was not read nor does any further action seem to have been taken with reference to it. At the last trial the plot was proved and several deeds were offered in connection with it to show that the lots fronting the river between Packer and Alice streets were sold in accordance therewith. It appears then from documentary evidence that while J. W. Cake was the owner of the whole tract he plotted it in lots and made the river the western boundary of those located along that stream. There was at the time a road along the river bank extending to high water mark in the river but this road did not appear on the J. W. Cake plot. It is exhibited on the J. A. Cake plot in which the subdivision of blocks 70 and 80 as they appeared on the J. W. Cake plot are indicated and the western line of this road is shown to be coincident with the east line of the river. This plot became a part of the conveyances by which the lots were sold and shows clearly that the grantors parted with all their interest in the land between the lots and the river. The plot is described in some of the conveyances as the plan of J. W. Cake's addition to the borough of Sunbury as changed by J. A. Cake, the grantor thereby recognizing the J. W. Cake plot as subdivided by J. A. Cake. We think it plain under the evidence referred to that neither J. W. Cake nor the plaintiffs ever intended to reserve any land between the street which is variously described in the conveyances as "the river bank road," "the river road," and "Front street," and the low water line in the river. This is the more apparent when the conceded fact is taken into consideration that the stream

was occupied by a permanent structure of the state which elevated the surface of the stream and made the precipitous bank of no value while the dam was in existence. The place from which the gravel was removed for which the plaintiffs sue was under water for more than sixty years at the bottom of the dam and it is not within the range of probability that J. A. Cake or his father in plotting and selling the lots in their property intended to reserve title to a part of the bed of the river to which they never had access and as to which there was no substantial ground for belief that it ever would become accessible. In this view of the case it is not material whether the grant to the owners of the lots along the river carry them to low water mark or whether, limiting their title by the descriptions in their deeds, the space between their lots and the river is to be treated as dedicated to the use of the lot owners and the public. In either case the plaintiffs are without title and therefore unable to maintain their action. That they and their predecessors in title as well as the public so regarded it is further evidenced by the fact that there was no assessment of this strip for taxes from 1863 until 1906, the first assessment having been made two years after the water went out of the dam. It is an effective and valid dedication to public use to leave open spaces designated on the plot of a town or addition thereto and this was done in the J. A. Cake plot. All of the land between the west line of the lots and the river is shown to be public space and when we consider that the location is along the river the conclusion is irresistible that the design was to give the owners of the lots and the public the use of the space to the water's edge if the grant of the lots did not give title to that limit: Cinn. v. White, 31 U. S. 431; Birmingham v. Anderson, 48 Pa. 253; Barclay v. Howell, 31 U. S. 498; Com. v. McDonald, 16 S. & R. 390. It is unnecessary to extend the discussion of the case. It is sufficient to say that under the evidence showing the relation of J. A. Cake to blocks 70 and 80 as owner, his adoption of the J. W. Cake plot and modification

thereof and the sale of lots in accordance with these plots no title remained in J. W. Cake or his vendees or in J. A. Cake as owner of the blocks of lots above stated, to the strip of land between the high water and low water marks in the river. The case was tried by the learned judge of the court below in accordance with our view as expressed on the former appeal, but the additional evidence, introduced at the last trial to show the conditions not only under which J. W. Cake plotted the land in the whole tract but under which J. A. Cake plotted and parted with the lots in blocks 70 and 80, changes the aspect of the case so that we should hold as a matter of law that the plaintiffs have no title which will support this action.

The judgment is, therefore, reversed.